FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 31 2020 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
NEW FALLS CORPORATION,

        Plaintiff,

   -against-

SONI HOLDINGS, LLC, KUNAL SONI,
ANJALI SONI, 632 MLK BLVD JR LLC,
OM P. SONI, SONI CAPITAL RESOURCES,
LLC, KANWAL KAPUR, WEANONA HUGIE
AND RICHARD SPEARS,

        Defendants.
-----------------------------------------------------------X

SHORT ORDER
2:19-cv-00449 (ADS) (AKT)

**APPEARANCES:**

**Vlock & Associates, P.C.**
*Attorneys for the Plaintiff*
630 Third Avenue 18th Floor
New York, NY 10017
    By:   Steven Paul Giordano, Esq., Of Counsel.

**Wesley Mead, Esq.**
*Attorney for Defendants Soni Holdings, LLC, Kunal Soni, Anjali Soni, 632 MLK BLVD JR LLC, Om P. Soni, and Soni Capital Resources, LLC*
20-77 Steinway Street Suite Sl
Astoria, NY 11105-1801

**Abrams Garfinkel Margolis Bergson, LLP**
*Attorneys for Defendant Kanwal Kapur*
1430 Broadway 17th floor
New York, NY 10018
    By:   Robert J. Bergson, Esq.,
           Andrew William Gefell, Esq., Of Counsel.

**Law Office of Eric J. Warner, LLC**
*Attorneys for Defendants Weanona Hugie and Richard Spears*
233 Mt. Airy Road First Floor
Basking Ridge, NJ 07920
    By:    Eric James Warner, Esq., Of Counsel.

**SPATT, District Judge.**

On January 23, 2019, plaintiff New Falls Corporation (the "Plaintiff" or "New Falls") commenced this action against Soni Holdings, LLC, Kunal Soni, Anjali Soni, and 632 MLK BLVD JR LLC, and added Om P. Soni, Soni Capital Resources, LLC, Kanwal Kapur ("Kapur"), Weanona Hugie ("Hugie"), and Richard Spears ("Spears") (collectively, the "Defendants") as defendants in an amended complaint on March 15, 2019.

This action is the most recent in a series of actions filed by the Plaintiff which grow out of the same alleged factual nexus. These actions concern different aspects of alleged fraudulent activity of members of the Soni family in their attempts to avoid repayment of funds to the Plaintiff in connection with a business loan which is evidenced by a Note and Guaranty Agreement. *See New Falls Corporation v. Om P. Soni, Kunal Soni, and Anjali Soni*, No. 16-cv-6805(ADS)(AKT); *New Falls Corporation v. Om P. Soni, Anjali Soni, and Sudershal Sethi*, No. 18-cv-276(ADS)(AKT); *New Falls Corporation v. Soni Holdings, LLC*, No. 18-mc-1111(RRM)(SJB). In the present action, the Plaintiff alleges that, in an attempt to avoid repayment of $265,834.84 pursuant to a Note held by the Plaintiff and on which judgment was entered in the Plaintiff's favor, the Defendants have conspired to fraudulently convey real property located at 632-634 MLK Jr. Boulevard, Newark, New Jersey 07102 (the "Newark Property").

The Amended Complaint asserts causes of action for: (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, *et seq.*, predicated on mail and wire fraud, money laundering, monetary transactions with unlawful proceeds, extortion, and

interstate racketeering, among others, (2) violation of New York Debtor and Creditor Law ("NY DCL") § 276 based on the conveyance of the Newark Property with an actual intent to defraud, hinder, or delay creditors; (3) violation of NY DCL § 273 on the grounds that the conveyance of the Newark Property was effectuated with the intent to defraud; (4) violation of NY DCL § 274 in that the conveyance of the Newark Property was effectuated by defendants who were engaged in a business for which the property remaining in the hands of defendants after the conveyance is an unreasonably small capital and is fraudulent to creditors; (5) tortious interference; (6) lack of legal justification for the conveyances; and (7) attorney's fees pursuant to NY DCL § 276-a.

Presently before the Court is a motion by Kapur, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(6), seeking to dismiss the causes of action in the Amended Complaint against him for failure to state a claim upon which relief may be granted.

For the following reasons, the Court grants Kapur's motion in its entirety.

## I. BACKGROUND

The Plaintiff asserts that Om P. Soni—and the other Defendants who conspired with him—designed and implemented a number of schemes which unlawfully rendered Soni Holdings, LLC insolvent for the purpose of defrauding the Plaintiff and preventing enforcement of the debt. Rather than describe each of the schemes in detail, the Court will recite the allegations inculpating Kapur, who was a Certified Public Accountant for Om P. Soni, Anjali Soni, Kunal Soni, Soni Holdings, LLC and 632 MLK BLVD JR LLC.

On or about May 14, 2007, Soni Holdings, LLC, for valuable and substantial consideration, executed and delivered to the Plaintiff's predecessor-in-interest, AmSouth Bank, a Note for Business and Commercial Loans ("the Note") for a business loan in the sum of $301,216.50, to be repaid with interest at the rate set forth in the Note. On the same day, Om P. Soni executed and

delivered to the Plaintiff's predecessor-in-interest, AmSouth Bank, a Guaranty Agreement ("the Guaranty") of the obligations under the Note. The Note was subsequently assigned and transferred to the Plaintiff by an allonge permanently affixed to the Note on September 15, 2015. Soni Holdings, LLC defaulted under the terms of the Note in 2014 by failing to pay principal and interest when due. The last payment by Soni Holdings LLC was made on April 14, 2014.

In 2016, the Plaintiff commenced an action in the Eastern District of New York captioned *New Falls Corporation v. Om P. Soni,* No. 16-cv-06805(ADS)(AKT) (the "EDNY Action"), asserting a claim to recover on the Note.

On February 22, 2018, a Judgment against Soni Holdings LLC was entered in the United States District Court for the Northern District of Alabama in the sum of $265,834.84 ("the Judgment") for repayment of the funds pursuant to the Note. The Judgment was registered in the United States District Court for the Eastern District of New York on April 18, 2018, in favor of the Plaintiff against Soni Holdings, LLC, in the sum of $265,834.84.

In December 2018, the Plaintiff served a subpoena in the EDNY Action on Kapur seeking documents that "relate to Soni Holdings LLC." After the Plaintiff served the subpoena, the Soni Defendants' then-counsel, Robert Bean ("Bean"), allegedly tampered with and attempted to intimidate Kapur with the goal of keeping him from producing information which would lead the Plaintiff to the discovery of the alleged fraudulent conveyances.

Thereafter, Kapur produced documents in response to the subpoena. Those documents mutilated and/or "whited-out" information on the documents produced in an apparent attempt to conceal the fraudulent conveyances and obstruct the Plaintiff from satisfying the debt. Other than Kapur's surreptitious alteration of the subpoenaed documents, the Amend Complaint contains no other allegations directly inculpating Kapur in the Soni Defendants' scheme.

## II. DISCUSSION

### A. THE LEGAL STANDARD

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Elec., Inc. v. City of N.Y.*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free School Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed. 2d 929 (2007). The Second Circuit has explained that, after *Twombly*, the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L.Ed. 2d 868 (2009)).

Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679.

### B. AS TO THE RICO CLAIMS AGAINST KAPUR.

"To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013). Kapur argues that the Amended Complaint fails to allege either a violation of the RICO statute or that his alleged violations caused the Plaintiff an injury. The Court agrees.

#### 1. As to the Section 1962(c) Claim Against Kapur.

"To establish a violation of § 1962(c) . . . a plaintiff must show that a person engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Cruz*, 720 F.3d at 120. "The requirements of section 1962(c) must be established as to each individual defendant." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001). The Court finds that the Amended Complaint lacks facts sufficient to allege that Kapur participated in a RICO enterprise and sufficiently particularized allegations that he committed a fraudulent predicate act.

##### a. As to Kapur's "Conduct."

To plead a RICO violation against Kapur, the Plaintiff must allege not only the existence of an enterprise, but also Kapur's engagement in the "conduct" of that enterprise. *Cruz*, 720 F.3d at 120; *see also* 18 U.S.C. § 1962(c). The Supreme Court has held that "[i]n order to participate, directly or indirectly, in the conduct of such enterprise's affairs, one must have some part in directing those affairs," that is, "one must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 179, 185, 113 S.Ct. 1163 (1993); *see also United States v. Praddy*, 725 F.3d 147, 155 (2d Cir. 2013). RICO liability, therefore, "depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,'

6

not just their *own* affairs." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163, 121 S.Ct. 2087 (2001) (quoting *Reves*, 507 U.S. at 185, 113 S.Ct. 1163).

"Based on *Reves*'s 'operation and management' test, courts have found various actions insufficient to trigger RICO liability." *Abbott Labs. v. Adelphia Supply USA*, No. 15-cv-5826, 2017 WL 57802, at *6 (E.D.N.Y. Jan. 4, 2017). "[S]imply aiding and abetting a violation is not sufficient to trigger liability." *United States v. Viola*, 35 F.3d 37, 40 (2d Cir. 1994), *abrogated on other grounds by Salinas v. United States*, 522 U.S. 52, 118 S.Ct. 469 (1997); *see also Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 403 (S.D.N.Y. 2000) ("[T]he mere fact that a defendant may have *aided* in the alleged scheme to defraud, *even if that aid was intentional*, does not give rise to liability under § 1962(c)."). "Performing tasks necessary or helpful to the enterprise does not itself meet the requirements of § 1962(c)." *New York v. United Parcel Serv., Inc.*, No. 15-cv-1136, 2016 WL 4203547, at *4 (S.D.N.Y. Aug. 9, 2016) (citing *Viola*, 35 F.3d at 41). "Nor is it enough to simply provide goods and services that ultimately benefit the enterprise." *U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 451–52 (S.D.N.Y. 2004).

Based on this authority, the facts in the Amended Complaint fail to allege that Kapur engaged in the conduct of a RICO enterprise. The Amended Complaint expressly alleges that the Soni family, not Kapur, directed the underlying transactions designed to prevent the enforcement of the Plaintiff's debt. As stated in the Plaintiff's opposition, Kapur is merely "a spoke within the wheel. The hub is the Soni Defendants." ECF 48-2 at 13. The Plaintiff makes no allegations connecting Kapur to those transactions or otherwise alleging that he operated or managed the enterprise. The only conduct ascribed to Kapur was his falsification of tax returns. However, the Amended Complaint asserts that Kapur did so at the direction of Bean, not as part of his own direction of the enterprise.

Consequently, Kapur's behavior is more adequately understood as a service that benefits the enterprise, rather than cognizable RICO conduct. In response, the Plaintiff alleges that it need not establish that Kapur directed activities and that participation in the racketeering enterprise is sufficient. The Plaintiff's argument is patently incorrect. "Indeed, it is well established that the provision of professional services by outsiders, such as accountants, to a racketeering enterprise, is insufficient to satisfy the participation requirement of RICO, since participation requires some part in directing the affairs of the enterprise itself." *Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison*, 955 F. Supp. 248, 254 (S.D.N.Y. 1997) (collecting cases); *see also Lippe v. Bairnco Corp.*, 218 B.R. 294, 304 (S.D.N.Y. 1998) ("[P]laintiffs fail to allege that the professional defendants had some part in directing the affairs of a RICO enterprise. Plaintiffs only allege that the professional defendants "knowingly, intentionally or recklessly" assisted in effecting the Transactions, in rendering advice on the Transactions, and/or in preparing disclosures regarding the Transactions[.]"); *Kriss v. Bayrock Grp. LLC*, No. 10-cv-3959, 2016 WL 7046816, at *17 (S.D.N.Y. Dec. 2, 2016) ("The TAC makes more allegations against the Salomon Defendants—including that they became involved in the Enterprise in 2003 and prepared financial documents in connection with many alleged fraudulent schemes—but still fails to show that the Salomon Defendants directed the Enterprise in any way."); *Tech. in P'ship, Inc. v. Rudin*, No. 10-cv-8076, 2011 WL 4575237, at *5 (S.D.N.Y. Oct. 4, 2011) ("The Complaint alleges that Accountant Defendants filed false information with the IRS and paid Rudin excessive compensation. . . . As alleged, the professional services provided by Accountant Defendants do not demonstrate any control over the enterprise.").

The Plaintiff also argues that the Amended Complaint sets forth that Kapur was an active participant in the scheme. However, the allegations cited by the Plaintiff merely collectively refer

to the Defendants as a whole. "[T]he Court must evaluate RICO allegations as to each individual defendant." *Tooker v. Guerrera*, No. 15-cv-2430, 2016 WL 4367956, at *10 (E.D.N.Y. Aug. 15, 2016). The Plaintiff cannot utilize "group pleading" describing the Defendants actions collectively to remedy the inadequacy of the allegations against Kapur in particular. *Franzone v. City of New York*, No. 13-cv-5282, 2015 WL 2139121, at *9 (E.D.N.Y. May 4, 2015).

Therefore, the Court finds that the Amended Complaint lacks facts sufficient to establish that Kapur engaged in the conduct of a RICO enterprise.

### b. As to Whether the Plaintiff Alleged Racketeering Activity with Sufficient Particularity.

Where a plaintiff alleges predicate acts that sound in fraud, those allegations must be pleaded with particularity under Federal Rule of Civil Procedure 9(b). *See Moore v. Paine Webber, Inc.*, 189 F.3d 165, 172 (2d Cir.1999) (holding Federal Rule of Civil Procedure 9(b) "applies to RICO claims for which fraud is the predicate illegal act"). Therefore, the Plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 88 (2d Cir.1999). "In addition, the [Plaintiff] must allege facts that give rise to a strong inference of fraudulent intent." *Moore*, 189 F.3d at 173.

Here, the entirety of the Amended Complaint's descriptions of Kapur's conduct states: "In December 2018, Defendant KANWAL KAPUR produced documents in response to a lawfully served Subpoena. However, Mr. Kapur unlawfully mutilated and/or 'whited-out' information on the documents produced in an attempt to conceal the fraudulent conveyances and obstruct Plaintiff from satisfying the debt." ECF 26 ¶ 44. This allegation neither explains why the documents submitted by Kapur were fraudulent nor articulates any facts that support a strong inference of fraudulent intent.

9

The conclusory assertion that Kapur submitted a fraudulent document, standing alone, fails to comply with the stringent standards of Rule 9(b). *See Knoll v. Schectman*, 275 F. App'x 50, 51 (2d Cir. 2008) ("Although the amended complaint sets forth the dates, locations, senders and recipient of the allegedly fraudulent communications, its assertions as to their contents and the reason each communication was fraudulent are conclusory."); *Brookhaven Town Conservative Comm. v. Walsh*, 258 F. Supp. 3d 277, 288 (E.D.N.Y. 2017) ("[T]he SAC's general contention that Walsh 'engaged in a scheme to unlawfully deprive the BTCC and all similarly situated plaintiffs of financial donations and contributions' is 'the kind of conclusory allegation[ ] that Rule 9(b) is meant to dissuade[.]'" (quoting *Knoll*, 275 Fed.Appx. at 51)). All other allegations in the Amended Complaint pertinent to Kapur's scienter describe the Defendants' collectively, and, as the Court already explained, constitutes impermissible group pleading. *DLJ Mortg. Capital, Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 326 (E.D.N.Y. 2009) ("[A]s to plaintiff's mail, wire, and bank fraud allegations, paragraph 91's reliance on group pleading against all 'RICO Defendants' fails to satisfy the heightened pleading requirements of Rule 9(b).").

Therefore, the Court finds that the Amended Complaint lacks facts sufficiently particular to allege that Kapur engaged in a RICO predicate act.

### 2. As to the Section 1962(d) Claim Against Kapur.

Section 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of" Sections 1962(a), (b), or (c). 18 U.S.C. § 1962(d); *see United States v. Sessa*, 125 F.3d 68, 71 (2d Cir.1997) (to establish the existence of a RICO conspiracy, a plaintiff must prove "the existence of an agreement to violate RICO's substantive provisions"). Thus, a plaintiff must allege that the defendants "agreed to form and associate themselves with a RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity

in connection with the enterprise." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir.1999). As to the "agreement" requirement, "[b]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir.1990). "Although a plaintiff is not subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) in pleading a RICO conspiracy, a RICO conspiracy claim 'should be more than a conclusory add-on at the end of a complaint.'" *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F.Supp.3d 207, 230 (E.D.N.Y.2014) (quoting *FD Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F.Supp.2d 362, 373 (E.D.N.Y.2002)).

Here, the Amended Complaint fails to allege specific facts showing that Kapur entered into a corrupt agreement to commit predicate acts. The only allegations that purport to allege a conspiratorial agreement do not mention Kapur at all, and the Amended Complaint is otherwise devoid of facts that would support the inference of his participation in such an agreement. The Plaintiff's general reference to the Defendants as a whole is insufficient.

Therefore, the Court finds that the Amended Complaint lacks facts sufficient to state a claim against Kapur for violation of Section 1962(d).

### 3. As to Whether Kapur Caused a Cognizable RICO Injury.

"[T]to state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense not only was a 'but for' cause of his injury, but was the proximate cause as well." *Hemi Grp., LLC v. City of NY., NY*, 559 U.S. 1, 9, 130 S.Ct. 983 (2010). "Central to the notion of proximate cause is the idea that a person is not liable to all those who may have been injured by his conduct, but only to those with respect to whom his acts were 'a substantial factor in the sequence of responsible causation,' and whose injury was 'reasonably foreseeable or anticipated

as a natural consequence.'" *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994) (quoting *Hecht*, 897 F.2d at 23–24). As the Supreme Court has explained, "proximate cause ... requires 'some direct relation between the injury asserted and the injurious conduct alleged.' A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." *Hemi Grp. LLC*, 559 U.S. at 9, 130 S.Ct. 983 (quoting *Holmes v. Secs. Inv'rs Prot. Corp.*, 503 U.S. 258, 268, 271, 274, 112 S.Ct. 1311 (1992)).

The Amended Complaint articulates no basis for finding Kapur's actions to be a proximate cause of the Plaintiff's injuries. In whole, the Plaintiff alleges that Kapur "attempt[ed] to conceal the fraudulent conveyances and obstruct Plaintiff from satisfying the debt." ECF 26 ¶ 44. However, there are no facts in the Amended Complaint providing a plausible factual basis for inferring that Kapur's actions in any way impeded the Plaintiff's ability to recover the debt. Indeed, the vast majority of the actions to make Soni Holdings, LLC judgment proof occurred before the Plaintiff subpoenaed Kapur, and the Amended Complaint admits that the Plaintiff uncovered the Soni Defendants' scheme "in spite of" Kapur's responses to the subpoena. *Id.* ¶ 45.

The allegation that the enterprise as a whole caused the Plaintiff damages is insufficient to establish that Kapur's conduct, in particular, caused the Plaintiff an injury. *See DeFalco*, 244 F.3d at 329 (rejecting argument that "a plaintiff may recover for injuries caused by the operation of a RICO enterprise, in addition to injuries caused by discrete unlawful predicate acts" even without evidence "that the defendants' conduct caused the losses they claimed"); *Empire Merchants, LLC v. Reliable Churchill LLLP*, No. 16-cv-5226, 2017 WL 5559030, at *17 (E.D.N.Y. Mar. 16, 2017) ("The Supreme Court has repeatedly stated that proximate cause depends on the relationship between defendants' RICO predicate acts and plaintiff's injury. Accordingly, the question before me is not whether defendants' conduct as a whole directly caused plaintiff's injury, but whether

the specific RICO predicate acts alleged to have been committed by defendants directly caused plaintiff's injury.").

It is true that a plaintiff may establish a RICO injury through "monetary losses in the form of legal fees," but that is only "so long as they were 'proximately caused by a RICO violation.'" *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 153 (S.D.N.Y. 2014) (quoting *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1167 (2d Cir.1993)). Because the Plaintiff does not allege that Kapur's response to the subpoena made it incur any additional legal expenses, there is no basis for finding a RICO injury on that ground.

Therefore, the Court finds that the Amended Complaint lacks facts sufficient to establish that Kapur's conduct caused a RICO injury.

### C. AS TO THE NY DCL CLAIMS AGAINST KAPUR.

The Amended Complaint asserts violations of NY DCL §§ 273, 274, and 276 on the grounds that the conveyance of the Newark Property was illegal. All three provisions only apply to dispositions of an encumbered property by a debtor. *See In re LaForte*, No. 14-bk-42711-NHL, 2017 WL 1240198, at *4 (Bankr. E.D.N.Y. Mar. 30, 2017) (describing §§ 273, 276); *Thaler v. Korn*, No. 13-cv-3768, 2014 WL 1154059, at *5 (E.D.N.Y. Mar. 19, 2014) (describing § 274). Kapur is not a debtor to the Plaintiff and is not alleged to have disposed of any encumbered property. He merely produced tax returns pursuant to a subpoena. Therefore, the Court finds that the Amended Complaint fails to state a claim under the NY DCL against Kapur as a matter of law.

### D. AS TO THE TORTIOUS INTERFERENCE CLAIM AGAINST KAPUR.

Under New York law, "a judgment creditor ha[s] a cause of action ... for tortious interference with the collectability of a judgment." *Ritter v. Klisivitch*, No. 06-cv-5511, 2008 WL 2967627, at *14 (E.D.N.Y. July 30, 2008) (citing *James v. Powell*, 25 A.D.2d 1, 3–4, 266 N.Y.S.2d

245, 248 (1966)). "Although applicable case law has not explicitly defined all of the elements of such a claim, it does make clear that the [Plaintiff] must establish that [Kapur] used improper means to interfere with [its] ability to enforce" the Judgment. *Siegel v. Kontogiannis*, No. 15-cv-2856, 2017 WL 9482101, at *10 (E.D.N.Y. Mar. 14, 2017), *report and recommendation adopted*, 2017 WL 1169545 (E.D.N.Y. Mar. 29, 2017).

"In all but the most egregious circumstances, 'dishonest, unfair, or improper means' must amount to misconduct that constitutes either a crime or an independent tort." *Staten Island Chiropractic Assocs., PLLC v. Aetna, Inc.*, No. 09-cv-2276, 2012 WL 832252, at *14 (E.D.N.Y. Mar. 12, 2012) (quoting *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190–91, 785 N.Y.S.2d 359, 818 N.E.2d 1100 (2004)). If the conduct at issue is not "criminal or independently tortious," a plaintiff must typically prove that the "defendant engage[d] in conduct for the sole purpose of inflicting intentional harm." *Carvel Corp.* 3 N.Y.3d at 190, 785 N.Y.S.2d 359, 818 N.E.2d 1100; *see also M.V.B. Collision. Inc. v. Allstate Ins. Co.*, 728 F.Supp.2d 205, 215 (E.D.N.Y.2010) ("In the years since *Carvel*, courts have been reluctant to find non-criminal or non-tortious conduct nonetheless sufficiently malicious or culpable to satisfy the 'wrongful means' element.").

The Amended Complaint fails to allege that Kapur engaged in wrongful means. The only allegation against him, in particular, alleges that pursuant to a subpoena he produced tax returns with redactions. The conclusory assertion that those alterations were fraudulent is insufficient to establish wrongful means. *See Glob. Packaging Servs., LLC v. Glob. Printing & Packaging*, 248 F. Supp. 3d 487, 495 (S.D.N.Y. 2017) ("Although Plaintiff alleges that Defendant 'intentionally interfered with those relationships' and 'acted with the sole purpose of harming Plaintiff,' this Court, even on a motion to dismiss, is not required to accept conclusory allegations—particularly allegations such as those asserted here, characterizing or attributing a state of mind of another

person."); *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 536 (S.D.N.Y. 2013) ("[P]laintiffs allege that 'Puglia acted solely out of malice in interfering with Plaintiffs' relationships with [clients].' This allegation is not only conclusory, but it is also inconsistent with plaintiffs' other allegations that Puglia interfered with plaintiffs' relationships to gain a competitive advantage.").

Therefore, the Court finds that the Amended Complaint lacks facts sufficient to state a claim for tortious interference against Kapur.

### III. CONCLUSION

For the foregoing reason, the Court grants Kapur's motion to dismiss the claims against him pursuant to Rule 12(b)(6). Further, the Court finds that any future amendments would be futile, and notes that the Plaintiff has not asked for leave to amend. Consequently, the Court dismisses the claims against Kapur with prejudice. The Clerk of the Court is respectfully directed to amend the caption accordingly.

**SO ORDERED.**
Dated: Central Islip, New York
March 31, 2020

/s/Arthur D. Spatt

_____
ARTHUR D. SPATT
United States District Judge