**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
NEW FALLS CORPORATION,

                                    Plaintiff,

            -against-

SONI HOLDINGS, LLC, KUNAL SONI, ANJALI
SONI, 632 MLK BLVD JR LLC, OM P. SONI,
SONI CAPITAL RESOURCES, LLC, KANWAL
KAPUR, WEANONA HUGIE and RICHARD
SPEARS,

                                    Defendants.
------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

CV 19-0449 (ADS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.    PRELIMINARY STATEMENT

        This action is the latest of several filed by Plaintiff New Falls Corporation ("Plaintiff" or

"New Falls") which emanates from the same alleged factual nexus.  *See New Falls Corporation*

*v. Om P. Soni*, No. 16-CV-6805; *New Falls Corporation v. Om P. Soni, Anjali Soni, and*

*Sudershal Sethi*, No. l8-CV-2768; *New Falls Corporation v. Soni Holdings, LLC*, No. 18-MC-

1111.  Each of these actions arises from allegations regarding the non-payment of a promissory

note executed on May 14, 2007 by Soni Holdings, LLC ("Soni Holdings"), to Plaintiff's

predecessor-in-interest, AmSouth Bank, for a business loan in the amount of $310,216.50

("Note").  *See generally* Amended Complaint ("Am. Compl.") [DE 26].  On January 23, 2019,

Plaintiff commenced the instant action against Defendants Soni Holdings, Kunal Soni, Anjali

Soni, and 632 MLK BLVD JR LLC (collectively, the "Original Defendants").  Plaintiff filed an

Amended Complaint on March 15, 2019, adding as defendants Om P. Soni, Soni Capital

Resources, LLC ("Soni Capital"), Kanwal Kapur, Weanona Hugie, and Richard Spears

(collectively with the Original Defendants, "Defendants"). *See* Complaint ("Compl.") [DE 1]; Am. Compl. Plaintiff alleges that Defendants engaged in various fraudulent activities to avoid repayment of $265,834.84 -- the balance of the Note held by Plaintiff -- on which judgment was entered in Plaintiff's favor. *See generally* Am. Compl.

The day after commencing this action, Plaintiff filed a motion for a preliminary injunction seeking to prohibit the Original Defendants and their representatives, agents, successors and assigns from selling, transferring, conveying, hypothecating, mortgaging, liening, encumbering, or otherwise disposing of the Defendants' ownership interest in the Property pending a determination of this action. *See* DE 6. Plaintiff's motion was referred to this Court for a Report and Recommendation as to whether the motion should be granted. *See* Electronic Order dated February 22, 2019. On July 5, 2019, this Court recommended to Judge Spatt that Plaintiff's motion be granted. *See* Report & Recommendation, dated July 5, 2019 ("July 5, 2019 R&R") [DE 57]. Judge Spatt adopted this Court's recommendation in its entirety and granted Plaintiff's motion for a preliminary injunction against the Original Defendants on August 7, 2020 ("August 7, 2019 Order"). *See* DE 64.

Defendants Soni Holdings, Kunal Soni, Anjali Soni, 632 MLK BLVD JR LLC, Om P. Soni, and Soni Capital (the "Moving Defendants") thereafter filed a motion (1) for reconsideration of the Court's August 7, 2019 Order and (2) to strike Plaintiff's Amended Complaint. *See* Moving Defendants' Memorandum of Law Part I in Support of Motion for Reconsideration ("Defs.' Mem. Pt I") [DE 74-1]; Moving Defendants' Memorandum of Law Part II in Support of Motion for Reconsideration ("Defs.' Mem. Pt. II") [DE 74-2]; Moving Defendants' Reply Memorandum of Law in Support of Motion for Reconsideration ("Defs.'

Reply") [DE 91].  Plaintiff opposes the motion.  *See* Plaintiff's Memorandum of Law in Opposition to Motion for Reconsideration ("Pl.'s Opp'n") [DE 86-24].

Judge Spatt referred the Moving Defendants' motion to this Court for a recommendation as to whether the motion should be granted and, if so, what relief, if any, should be awarded.  *See* DE 75.  Upon the untimely death of Judge Spatt, the case was subsequently reassigned to Judge Feuerstein.  *See* July 22, 2020 Electronic Order.  For the reasons which follow, the Court respectfully recommends to Judge Feuerstein that the Moving Defendants' motion to reconsider, vacate, or modify the August 27, 2019 Order granting a preliminary injunction against the Original Defendants and to strike the Amended Complaint be DENIED.

## II.  RELEVANT BACKGROUND

This Court has previously issued two (2) Reports and Recommendations in this action which recite the procedural history and underlying facts from which this action arises.  *See* July 5, 2019 R&R; May 8, 2020 Report & Recommendation [DE 104].  Therefore, the Court assumes familiarity with the underlying facts and procedural history of this action and will recite only those facts which are necessary to evaluate the present motion.

On January 23, 2019, Plaintiff New Falls commenced this action against the Original Defendants.  *See* Compl.  Plaintiff filed an Amended Complaint on March 15, 2019, adding as defendants Om P. Soni, Soni Capital, Kanwal Kapur, Weanona Hugie, and Richard Spears.  *See generally* Am. Compl.  Plaintiff alleges that, among other things, Defendants engaged in a scheme to fraudulently convey property owned by Soni Holdings located at 632-634 MLK Jr. Boulevard, Newark, New Jersey 07102 ("Property") to render Soni Holdings insolvent and, consequently, judgment-proof.  *See id*.  The details of the alleged scheme are set forth in detail in the Court's July 5, 2019 R&R and will not be repeated here.

Prior to filing this action, and in accordance with the provisions of the Note, Plaintiff commenced an arbitration against Soni Holdings for its failure to make payments on the Note subsequent to April 14, 2014. *See* "Excerpts of Plaintiff, New Falls Corporation's AAA Submission Documents" annexed as Exhibit F [DE 74-26] to the Declaration of Wesley Mead, Esq. in Support of Defendants' Order To Show Cause ("Mead Decl.") [DE 74-3]. At the time Plaintiff commenced the arbitration, the unpaid principal balance on the Note was $204,559.72. *Id*. at 12. At the conclusion of the arbitration, Plaintiff was awarded $265,434.83, comprised of $204,559.72 in unpaid principal balance, $34,263.18 in accrued interest, and $8,070.00 in attorneys' fees and arbitration fees (the "Arbitration Award"). *Id*. at 15-16. On February 22, 2018, Plaintiff obtained a judgment against Soni Holdings in the amount of $265,834.84 from the Northern District of Alabama based on the arbitration award (the "Judgment"). *See* Am. Compl. ¶ 33. Thereafter, Plaintiff registered the Judgment in this District on April 18, 2018. *Id*. ¶ 34.

On January 24, 2019, Plaintiff filed a motion seeking a preliminary injunction restraining the Original Defendants "from selling, conveying, hypothecating, mortgaging, liening, encumbering, or otherwise disposing of the Defendants' ownership interest" in the Property pending determination of this action. *See* DE 6. That same day, Judge Feuerstein entered a temporary restraining order against the Original Defendants and ordered Plaintiff to post a bond in the amount of $2,500 with the Clerk's Office. *See* DE 9. On February 22, 2019, Judge Feuerstein referred Plaintiff's motion for a preliminary injunction to this Court for a Report and Recommendation as to whether the motion should be granted. *See* February 22, 2019 Electronic Order. The Original Defendants then moved to increase the amount of the bond required to be posted by $1,700,000 to protect against damage which the Original Defendants argued would

4

result if they were prevented from selling the Property.  *See* DE 24.  This motion was also referred to this Court for a Report and Recommendation as to whether the motion should be granted.  *See* April 16, 2019 Electronic Order.

On February 25, 2019, this case was reassigned to Judge Spatt.  *See* February 25, 2019 Electronic Order.  The Original Defendants, along with Om P. Soni and Soni Capital, filed an Answer to the Amended Complaint on April 25, 2019.  *See* Answer [DE 31].  Plaintiff's motion for preliminary injunction and the Original Defendants' motion to increase the bond amount were fully briefed on February 13 and February 28, 2019, respectively.  *See* DE 6, 17, 21, 24-25.  On June 26, 2019, this Court held a hearing on both motions and rendered a decision orally on the record.  *See* July 5, 2019 R&R [DE 57] at 1.  The Court's oral decision was followed by a written R&R on July 5, 2019 recommending that Plaintiff's motion for a preliminary injunction against the Original Defendants be granted and that the Original Defendants' motion to increase the bond amount to $1,700,000 be denied.  *See generally* July 5, 2019 R&R.  On August 7, 2019, having considered the parties' objections to the July 5, 2019 R&R, Judge Spatt adopted the R&R in its entirety ("August 7, 2019 Order").[1]  *See* DE 64.

During this time, the Law Offices of Kenneth A. Reynolds, Esq., P.C. was counsel of record for the Moving Defendants.  *See* DE 16.  However, on July 26, 2019 -- after the Original Defendants filed objections to the R&R but before Judge Spatt adopted the July 5, 2019 R&R in its entirety -- The Mead Law Firm, P.C. filed a notice of appearance on behalf of the Moving

---

[1]     On August 28, 2019, the Original Defendants filed an interlocutory appeal of Judge Spatt's August 7, 2019 Order.  *See* DE 68.  The instant motion was filed as the appeal was pending.  While this motion was being briefed, the Moving Defendants filed a motion to withdraw their interlocutory appeal.  *See* DE 89.  The Second Circuit dismissed the Original Defendants interlocutory appeal, with prejudice, on February 25, 2020.  *Id.*

Defendants.  *See* DE 61.  Shortly thereafter, the Law Offices of Kenneth A. Reynolds, Esq., P.C. withdrew as counsel of record for the Moving Defendants.  *See* DE 66-67.

The Moving Defendants filed the instant motion on December 15, 2019, seeking "reconsideration, vacatur, and/or modification of the preliminary injunction and denial of the motion to increase [the] bond" pursuant to Rules 60(b)(2), 60(b)(3) and 65 of the Federal Rules of Civil Procedure as well as the Court's inherent powers.  *See* Moving Defendants' Notice of Motion for Reconsideration ("Defs.' Not. of Mot.") [DE 74].  The Moving Defendants request that the preliminary injunction be vacated in its entirety, or, in the alternative, that the preliminary injunction be modified to allow for the sale of the Property to proceed on the condition that $265,834.84, the amount of the Judgment, be deposited into either an attorney escrow account or another account the Court deems appropriate.  *See* Defs.' Mem. Pt. II at 9-15. The Moving Defendants also move to strike the Amended Complaint based on Plaintiff's purported failure to seek permission from this Court under Rule 21 to add defendants prior to filing the Amended Complaint.  *See* Defs.' Mem. Pt. II at 8; Letter Mot. to Withdraw FRCP 15 Timeliness Arguments Only [DE 78].  In the alternative, the Moving Defendants request permission to answer or respond by a date certain.  *Id.*  In support of their motion, the Moving Defendants submitted (1) the Declaration of Kunal Soni, owner of Defendant 632 MLK BLVD JR LLC and manager of Defendant Soni Holdings ("Kunal Decl.") [DE 74-33]; (2) the Declaration of Cheskel Parnes, the Managing Member of LIEL SHISHI MLK LLC, ("Parnes Decl.") [DE 74-20]; and (3) the Mead Declaration [DE 74-3], along with the exhibits attached to those declarations.

On February 6, 2020, Plaintiff filed opposition to the Moving Defendants' motion, including the Declaration of Steven Giordano, Esq. ("Giordano Decl.") [DE 86], and the

Declaration of Wade Parker, Senior Vice President of Regions Bank, NA ("Parker Decl.") [DE 86-1], as well as the exhibits attached to those declarations. *See* Pl.'s Opp'n. The Court notes that the Declaration of Attorney Giordano, counsel of record for Plaintiff, is a 31-page statement which purports to set forth the "facts and circumstances" giving rise to the instant motion. *See generally* Giordano Decl.; Pl.'s Opp'n at 5. This declaration, however, contains legal arguments and goes well beyond a recitation of the relevant facts. This information should have been included in Plaintiff's memorandum of law in accordance with Judge Spatt's Individual Rules. Plaintiff's attempt to supplement its 25-page memorandum of law with the attorney declaration violates Judge Spatt's Individual Rule VI.B.i which limits the length of an opposing memorandum of law to 25 pages. Accordingly, the Court declines to consider the attorney declaration with the exception of the exhibits attached. *See Callari v. Blackman Plumbing Supply, Inc.,* 988 F. Supp. 2d 261, 266 (E.D.N.Y. 2013) (citing *Great Atlantic & Pacific Tea Co., Inc. v. Town of East Hampton*, 997 F. Supp. 340, 346 n.1 (E.D.N.Y. 1998)).

In addition to filing two letter motions seeking to clarify, correct, and/or withdraw certain inaccurate representations and arguments relying on representations made in its moving papers, *see* DE 78-79, the Moving Defendants filed their reply on February 28, 2020. *See* Defs.' Reply.

Judge Spatt referred the Moving Defendants' motion to this Court for a report and recommendation as to whether the motion should be granted and, if so, what relief, if any, should be awarded. *See* DE 75. As noted, the case was subsequently reassigned to Judge Feuerstein. *See* Electronic Order, dated July 22, 2020.

## III.    DISCUSSION

### A.    Preliminary Issues

As an initial matter, the Court points out that the Moving Defendants' submissions in support of the instant motion are, at times, convoluted, repetitive, and unclear.  The first 23 pages of the Moving Defendants' memorandum of law intertwines a statement of facts, procedural history, and legal arguments.  The Moving Defendants make little effort to explain the manner in which their legal arguments apply to the factors required to be considered in evaluating a motion for preliminary injunctive relief, with the exception of the Moving Defendants' reference to the irreparable harm and balance of equities prongs of the standard to be applied.  Further, it is unclear under which legal principles and standards the Moving Defendants seek to have their various arguments analyzed.  The Moving Defendants' assert that the instant motion is brought pursuant to both Rule 60(b) -- which, under certain circumstances, permits relief from a final order -- and pursuant to the Court's inherent power to modify a preliminary injunction in consideration of new facts.  *See* Defs.' Mem. Pt. II at 9; Not. of Mot. at 1.  However, the legal standard and principles applicable to a motion brought under Rule 60(b) are slightly different from those applicable to a motion seeking to modify a preliminary injunction under the Court's inherent power.  The Moving Defendants, however, do not address these differences.  Notwithstanding these deficiencies, the Court has endeavored to organize and evaluate the Moving Defendants' arguments under the proper standards and legal principles below.

### B.    Motion for Reconsideration under Rule 60(b)

The Moving Defendants purport to bring their motion for reconsideration under Rule 60(b)(2) and (b)(3).  Rule 60(b) provides that "the court may relieve a party...from a **final** judgment, order, or proceeding" for several enumerated reasons.  Fed. R. Civ. P. 60(b) (emphasis

added).  Motions under this rule "must be made within a reasonable time and…no more than a year after entry of the judgment or order or the date of the proceeding." *Id.* By its express terms, Rule 60(b) applies only to ***final*** orders, not interlocutory orders. *See Byrne v. Liquid Asphalt Sys.,* 250 F. Supp. 2d 84, 87 (E.D.N.Y. 2003) (emphasis added); *Bey v. New York*, No. 11-CV-3296, 2012 WL 4370272, at \*3 (E.D.N.Y. Sept. 21, 2012) (finding motion to vacate the court's order under Rule 60(b) premature because the order "[was] not a final order for the purposes of Rule 60(b)"); *D9 Collection, L.L.C. v. Jimmy Jazz, Inc.,* No. 11-CV-8752, 2012 WL 13034897, at \*2 (S.D.N.Y. June 29, 2012) ("Defendants' motion therefore 'cannot be construed as one for relief from entry of a final judgment or order pursuant to Rule 60(b), as [a] preliminary injunction is not a final judgment, order, or proceeding that may be addressed by a motion for relief from judgment.'") (citation omitted); *Wanamaker v. Columbian Rope Co.,* 907 F. Supp. 522, 526–27 (N.D.N.Y. 1995) (finding that an order "dismissing some but not all of the defendants, and dismissing some but not all of plaintiff's claims, was interlocutory and thus not 'final' for the purposes of Rule 60(b)").  Since Judge Spatt's August 7, 2019 Order granting preliminary injunctive relief was not a final order, the Moving Defendants' attempt seek relief from the Order under Rule 60(b) is procedurally defective.

Nonetheless, Rule 54(b) allows for reconsideration of non-final orders in the district court's equitable discretion.[2] *See, e.g., Buczakowski v. 1199SEIU*, No. 18-CV-0812, 2020 WL

---

[2]    Although Plaintiff's motion is technically untimely under Local Rule 6.3, which provides that motions for reconsideration "shall be served within fourteen (14) days after the entry of the Court's determination of the original motion," the Court in its discretion will nonetheless consider the merits of Plaintiff's motion.  *See* Fed. R. Civ. P. 54(b) (stating that nonfinal judgments "may be revised at any time before the entry of a [final judgment].");  *Buczakowski*, 2020 WL 2092480, at \*2 (considering an untimely Rule 54(b) motion because it was of an interlocutory order); *Vicuna*, 298 F. Supp. 3d at 432 (same); *Williams v. Cty. of Nassau*, 779 F. Supp. 2d 276, 280 (E.D.N.Y. 2011), *aff'd*, 581 Fed. App'x 56 (2d Cir. 2014) (same).

2092480, at *2 (N.D.N.Y. May 1, 2020); *Kaplan v. City of New York*, No. 14-CV-4945, 2018 WL 2084955, at *5 (S.D.N.Y. Mar. 22, 2018); *Vicuna v. O.P. Schuman & Sons, Inc.,* 298 F. Supp. 3d 419, 432 (E.D.N.Y. 2017); *Raymond v. Mid-Bronx Haulage Corp.,* No. 15-CV-5803, 2017 WL 9882601, at *1 (S.D.N.Y. June 10, 2017).  Motions under Rule 54(b) are subject to the law of the case doctrine.  *Id.* at *2 (citing *In re Rezulin Liability Litigation ("In re Rezulin")*, 224 F.R.D. 346, 349 (S.D.N.Y. 2004)).  This means that the decisions referenced in Rule 54(b) "may not usually be changed unless there is 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'"  *Official Comm. of Unsecured Creditors of the Color Tile, Inc. v. Coopers & Lybrand, LLP,* 322 F. 3d 147, 167 (2d Cir. 2003) (citing *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F. 2d 1245, 1255 (2d Cir. 1992)); *see also Jordan v. Tucker, Albin & Assocs.*, No. 13-CV-6863 , 2018 WL 4259987, at *2 (E.D.N.Y. Sept. 6, 2018) (An "interlocutory order 'may not usually be changed unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.") (internal quotations omitted).

Hence, "[t]he standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Pall Corp. v. 3M Purification Inc.,* No. 03-CV-0092, 2015 WL 5009254, at *1 (E.D.N.Y. Aug. 20, 2015) (quotations omitted and amendments in original) (citing *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995)). "It is well-settled that [a motion for reconsideration] is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a

10

second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.,* 684 F. 3d 36, 52 (2d Cir.), *as amended* (July 13, 2012) (quotations omitted). "A party seeking reconsideration may ... no[t] advance new facts, issues or arguments not previously presented to the Court." *Bishop v. Cty. of Suffolk*, No. 13-CV-446, 2018 WL 4623016, at *2 (E.D.N.Y. Sept. 25, 2018) (citing *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014)).

Finally, "reconsideration 'is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Sigmon v. Goldman Sachs Mortg. Co.*, 229 F. Supp. 3d 254, 257 (S.D.N.Y. 2017) (quoting *Anwar v. Fairfield Greenwich Ltd.*, 164 F. Supp. 3d 558, 560 (S.D.N.Y. 2016)). "The decision to grant or deny a motion for reconsideration lies within the discretion of the district court." *Jordan v. Tucker, Albin & Assocs.*, No. 13-CV-6863, 2018 WL 4259987, at *2 (E.D.N.Y. Sept. 6, 2018) (citing *Devlin v. Transp. Comm'ns Int'l Union*, 175 F.3d 121, 132 (2d Cir. 1999)).

The Moving Defendants argue that newly discovered evidence demonstrates that the Judgment was obtained through fraudulent misrepresentations by New Falls and, therefore, should not form the basis of the preliminary injunction. *See* Defs.' Mem. Pt. I at 7-9. In obtaining the Judgment, the Moving Defendants assert that New Falls misrepresented to the arbitrator that: (1) the Note was validly assigned to New Falls from Regions Bank; and (2) the total outstanding principal, as of September 17, 2015, on the Note was $204,559.72. *See id*. The Court finds both of these assertions unfounded.

First, with respect to the assignment of the Note, the Moving Defendants argue that Regions Bank did not validly assign the Note to New Falls because "Regions Bank … has indicated it has no records of any assignment, affidavit of debt, contract or sale of the subject Note with New Falls Corporation." *See id*. at 7. In support of this argument, the Moving

11

Defendants point to Regions Bank's responses to a non-party subpoena served on it by the Moving Defendants on September 12, 2019.  *Id*.  Specifically, the Moving Defendants appear to rely on Regions Bank's representation that their Loan Department "was unable to locate *additional* loan records-assignment, affidavit of debt, a bill of sale, contract, emails, or correspondence concerning a sale," in order to draw the conclusion that none must have existed in the first instance.  *See* Regions Bank's Response to Subpoena [DE 74-30] at 4, annexed as Exhibit G to Mead Decl. (emphasis added).  However, in its initial response to the subpoena, Regions Bank already produced to the Moving Defendants the Allonge dated September 15, 2010 which is permanently affixed to the Note.  *See* Mead Decl., Ex. G at 10.  The Declaration of Wade Parker, the Senior Vice President of Regions Bank, states that "the Note was assigned and transferred for valuable and substantial consideration to Plaintiff New Falls Corporation by Allonge dated September 15, 2015."  Parker Decl. ¶ 8.  The Moving Defendants, however, completely ignore the existence of the Allonge and take out of context Regions Bank's responses to the subpoena to draw the erroneous conclusion that there was no assignment of the Note from Regions Bank to New Falls.

Second, with respect to the principal balance owed on the Note, the Moving Defendants argue that the total outstanding principal owed on the Note, as of September 17, 2015, was $16,732.11 and not $204,559.72, which is the amount New Falls represented to the arbitrator as owed.  *See* Defs.' Mem. Pt. I at 8.  In support of this argument, Defendants rely on an itemized transaction history generated by Regions Bank in connection with the Note.  *Id*. at 8.  Until September 2015, the transaction history reflects that the last payment made toward the balance of

the Note was on May 14, 2014.[3]  *See* Mead Decl., Ex. G at 12.  Thereafter, no payments were made for approximately 16 months as a result of which late charges were assessed monthly.  *Id*. The transaction history further reflects that, as of August 26, 2015, the principal balance and late charges owed on the Note was $204,559.72.  *Id*.  However, two days after the Note was assigned to New Falls, two payments were made toward the principal balance of the Note in the total sum of $187,827.61 and a credit was awarded toward the interest in the amount of $21,759.17.  *Id*. Each of these transactions was made on September 17, 2015, and decreased the balance owed on the Note to $16,732.11.  *Id*.

Significantly, at no point in their submission do the Moving Defendants ever claim responsibility for the payments made on September 17, 2015.  Indeed, at no point during this litigation or the two other related litigations have the Moving Defendants either challenged the principal balance owed on the Note or asserted that Soni Holdings tendered payments in an amount which reduced the principal balance to $16,732.11.  Despite not having taken such position, the Moving Defendants now point to a seemingly arbitrary number on the transaction history to assert that Soni Holdings somehow owed a principal balance of $16,732.11 at the time the Judgment was entered.  Admittedly, the transaction history submitted to the arbitrator omits the transactions dated after June 26, 2015.  *Compare* Mead Decl., Ex. G at 12 (including transactions up to September 17, 2015) *with* Mead Decl., Ex. F at 24 (including transactions up to June 26, 2015).  However, this circumstance does not support the contention that a material misrepresentation of fact was made to the arbitrator regarding the principal balance owed on the Note.  The transaction history plainly supports New Falls' representation to the arbitrator that the

---

[3]     This payment was ultimately reversed due to insufficient funds in the transferring account.  *See* Mead Decl., Ex. G at 12.

total principal and interest accrued as of the date New Falls sought an award on the Note was $238,822.90, comprised of $204,559.72 in outstanding principal and $34,263.18 in accrued interest.

As to the payments and credits made on September 17, 2020, Wade Parker's Declaration explains that Regions Bank, in accordance with internal accounting procedures, applied a portion of the payment made by New Falls in purchasing the Note to the account and that the transactions do not represent payments from and/or credits due to Defendants. *See* Parker Decl. ¶ 7. According to Parker, "[a]fter assignment of the Note and related documents to Plaintiff [on September 15, 2015], there were no payments received from the Defendants." *Id*. ¶ 8. Therefore, the evidence submitted by the Moving Defendants does not establish that New Falls made any material misrepresentations to the arbitrator regarding the total principal balance and interest owed by Soni Holdings on the Note.

The Moving Defendants make several additional arguments in support of their request for reconsideration of the August 7, 2019 Order, the bulk of which the Moving Defendants previously raised to varying extents or could have raised when initially opposing New Falls' motion for preliminary injunctive relief. The Court notes that when the Original Defendants opposed New Falls' motion for a preliminary injunction, they were represented by different counsel than the attorney who brought the instant motion. However, a party does not get the proverbial second bite at the apple simply because it obtains new counsel during the course of the litigation. As noted, reconsideration is not "a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits or otherwise taking a second bite at the apple." *Analytical Surveys,* 684 F.3d at 52 (internal quotation marks, alterations, and citation omitted). Further a party is "barred from making for the first time in a

14

motion for reconsideration an argument it could readily have raised when the underlying issue was being briefed but chose not to do so.  In other words, a party may not advance new facts, issues or arguments not previously presented to the Court on a motion for reconsideration." *Berg v. Kelly*, 343 F. Supp. 3d 419, 424 (S.D.N.Y. 2018) (internal quotations omitted) (collecting cases).  For these reasons alone, the bulk of Plaintiff's arguments fail.  *See Shrader,* 70 F. 3d at 257 (noting that a "motion for reconsideration should not be granted where the moving party seeks solely to relitigate an issue already decided"); *Vornado Realty Tr.,* No. 08-CV-4823, 2013 WL 5719000, at *3 (E.D.N.Y. Oct. 18, 2013) ("[I]f the movant had the opportunity to present the evidence or litigate the issue earlier but did not do so, either because of inadvertence or as a strategic maneuver, the Rule 54(b) motion should be denied.").  Nonetheless, to the extent that the Moving Defendants have submitted purportedly "new" evidence in support of their arguments, the Court will consider them in turn.

The Moving Defendants essentially assert three arguments related to the likelihood of success on the merits of Plaintiff's fraudulent conveyance claims.  First, the Moving Defendants argue that the Agreement of Purchase and Sale, dated January 18, 2019, in which Defendant 632 MLK BLVD JR LLC purportedly attempted to sell the Property to an entity named LIEL SHISHI MLK LLC for $1,787,000 (the "Agreement"), is a legitimate agreement with a bona-fide purchaser.  *See* Defs.' Mem. Pt. I at 11.  In support of this argument, the Moving Defendants rely on the Declaration of Cheskel Parnes, the Managing Member of LIEL SHISHI MLK LLC, in which Mr. Parnes states that (1) the Agreement constitutes a "fully negotiated, arms-length transaction between unrelated parties, (2) "[$1,787,000] constitutes the fair-market value of the Property," and (3) neither he, nor any of his companies, have had any prior business or personal relationship with [632 MLK BLVD JR LLC] nor any principals or owner of [632 MLK BLVD

JR LLC]."  Parnes Decl. ¶ 5-7.   The Court observes that the Original Defendants previously introduced the Agreement to the Court for consideration but did not submit the Parnes Declaration on behalf of LIEL SHISHI MLK LLC.  Notwithstanding that fact, having reviewed the contents of the declaration, the Court is not persuaded that it tips the scales in favor of the Original Defendants as to the likelihood of success on the merits.

The sale of the Property from Defendant 632 MLK BLVD JR LLC to LIEL SHISHI MLK LLC is only one aspect of the alleged fraudulent scheme forming the basis of New Falls' fraudulent conveyance claims.  Further, the Parnes Declaration raises as many questions as it seeks to answer.  The fact that Parnes concedes LIEL SHISHI MLK LLC did not legitimately exist as a registered entity until after the Agreement was executed and the preliminary injunction was entered is suspicious at best.  Further, Parnes takes great care to dispel the notion that he had any prior relationship with 632 MLK BLVD JR LLC or its principals or owners.  However, Parnes notably neglects to address whether he was closely related to or had any prior relationships with any other individuals in the Soni family involved in the alleged fraudulent scheme or their various closely held corporations -- a factor the Court considered as one of the many "badges of fraud" alleged by New Falls.  *See* July 5, 2019 R&R at 26.

Second, the Moving Defendants argue that the circumstances surrounding the notarization of the "Family Agreement"[4] dated August 26, 2011 lack any "impropriety."  *See* Defs.' Mem. Pt. II at 2-3.  In support of this argument, the Moving Defendants rely on the Declaration of Weanoma Hugie, along with a letter from the New Jersey Department of the

---

[4]      The "Family Agreement" sets forth that Defendant Soni Holdings, LLC was a "place holder" for the purchase of the Newark Property. The document was notarized on August 26, 2011 by Defendant Weanona Hugie, a Notary Public. *See* Am. Compl. ¶ 55; July 5, 2019 R&R at 7.

Treasury, Division of Revenue and Enterprise Services ("DORES") stating that Ms. Hugie was a notary on August 26, 2011. *See* Declaration of Weanoma Hugie ("Hugie Decl.") [DE 74-31], annexed as Exhibit H to the Mead Decl. The Court points out that the Original Defendants previously submitted and the Court considered the same Hugie Declaration in support of their objections to the Court's July 5, 2019 R&R and, thus, the declaration need not be considered again here. *Compare* DE 58-2 *with* Ex. H to Mead Decl. at 5. And, although the DORES correspondence seemingly confirms that Ms. Hugie was a notary on August 26, 2011, the fact still remains that the date of the Family Agreement and the date it was stamped by Ms. Hugie differ by almost eight years, lending support to New Falls' theory that the document was backdated. Further, the inconsistency in dates resulted from Defendants' efforts to enter into the Agreement upon learning of their exposure to liability which was one of the factors contributing to the "badges of fraud" alleged by New Falls. *See* July 5, 2019 R&R at 25-26. As such, similar to the Parnes Declaration, the Court is not persuaded that the DORES correspondence tips the scales in favor of the Original Defendants as to the likelihood of success on the merits.

Third, the Moving Defendants attempt to reargue the application of the Supreme Court's decision in *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308 (1999) to the circumstances presented in this action. *See* Defs.' Mem. Pt. II at 9-15. However, the Court already considered and discussed *Grupo* in its July 5, 2019 R&R. *See* July 5, 2019 R&R at 19-24. The Moving Defendants failed to address the Court's reasoning in the July 5, 2019 R&R or identify what, if anything, in that reasoning constitutes clear error. *See Jordan,* 2018 WL 4259987, at *2 (An "interlocutory order 'may not usually be changed unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a

17

clear error or prevent a manifest injustice."). Consequently, any reargument of the application of *Grupo* by the Moving Defendants is unavailing.

As to the irreparable harm and balance of equities prongs, the Moving Defendants again assert the same arguments raised in opposition to the motion for preliminary injunction, including: (1) the potential loss of the buyer for the Property and, consequently, the current fair market value of the Property in the amount of $1,787,000, *compare* DE 17 at 6-17 and DE 17-1 ¶¶ 17-19 *with* Kunal Decl. ¶¶ 5, 8; (2) the potential for liability arising from a breach of the Agreement, *compare* DE 17-1 ¶ 20 *with* Kunal Decl. ¶ 5; and (3) the existence of real property owned by Soni Holding in Missouri, *compare* DE 17 at 2 and DE 17-1 ¶¶ 13-16 *with* Defs.' Mem. Pt. II at 5-6. The Moving Defendants' attempt to relitigate these arguments is unavailing.

The Court, however, notes that unlike the Kunal Declaration submitted in opposition to New Falls' motion for a preliminary injunction, the Kunal Declaration submitted in support of the instant motion asserts that it will be more difficult for the Defendant 632 MLK BLVD JR LLC to find another buyer for the Property in light of the fact that it is potentially losing its professional property management company and will soon lose its main tenant, the YMCA. *See* Kunal Decl. ¶¶ 4-8. Assuming that the marketability of the Property is impacted by the existence of the management company, which is not supported by anything in the record, Defendant 632 MLK BLVD JR LLC has not asserted, let alone demonstrated, that there are any obstacles preventing it from replacing its management company or main tenant. Further, it is unclear whether LIEL SHISHI MLK LLC was aware of the YMCA's intended departure from the Property when entering into the Agreement on January 18, 2019. Although the Moving

Defendants had the opportunity to address this in the Parnes Declaration, they did not do so.[5]  It would strain credulity if, as the Moving Defendants contend, the parties entered into extensive arms-length negotiations over the sale of the Property, but did not discuss the tenancy of the Property's main tenant whose lease was going to end shortly after the date of the Agreement.

If LIEL SHISHI MLK LLC was aware that the YMCA elected not to renew its tenancy and agreed to purchase the Property regardless, then there would be no apparent harm to the Moving Defendants as a result of the preliminary injunction.  Alternatively, even if LIEL SHISHI MLK LLC was not aware that the YMCA elected not to renew its tenancy, it presumably was aware of the substantial risk that the Property might be vacant upon closing. Despite this risk, LIEL SHISHI MLK LLC offered to purchase the Property for $1,787,000. Therefore, it is unclear to the Court why Defendant 632 MLK BLVD JR LLC will not be able to find another buyer even in light of the vacancy if LIEL SHISHI MLK LLC does not ultimately purchase the Property.[6]  As such, the Moving Defendants' purportedly "new" facts -- related to the potential loss of the buyer for the Property and, consequently, the current fair market value of the Property -- does not change the Court's prior consideration of this argument.

Lastly, the Moving Defendants argue in considerable detail that the RICO claims pled in the Amended Complaint should not form the basis of the preliminary injunction.  *See* Defs.' Mem. Pt. I at 11-15; Defs.' Mem. Pt. II at 1-2.  The RICO claims, however, were not critical to

---

[5]      The Parnes Declaration does not indicate that LIEL SHISHI MLK LLC's desire to purchase the Property has subsided in any way.

[6]      The vacancy may impact the value of the Property as it remains vacant; however, it is unclear to what extent.  Further, the Moving Defendants do not argue that they will suffer irreparable harm as a result of the potential decrease in value to the Property but instead argue that they may not find another buyer if the preliminary injunction is not vacated to allow for the sale of the Property to LIEL SHISHI MLK LLC.  *See* Kunal Decl. ¶¶ 4-8.

the Court's recommendation in the July 5, 2019 R&R or the August 7, 2019 Order adopting this Court's July 5, 2019 R&R.  Indeed, Judge Spatt's August 7, 2019 Order expressly provided that "Judge Tomlinson's analysis would still stand even if the Court disregarded the RICO claims…. The inclusion or exclusion of the RICO claims in the Court's review would have had no effect on the outcome of the motion."  *See* DE 64 at 7-8.

For these reasons, the Court respectfully recommends to Judge Feuerstein that the Moving Defendants' motion for reconsideration of the August 7, 2019 Order granting a preliminary injunction against the Original Defendants, pursuant to either Rule 60(b) or Rule 54(b), be DENIED.

### C.    Motion to Vacate or Modify under the Court's Inherent Power

A preliminary injunction is an interlocutory order subject to review by a court prior to its entry of judgment.  *D9 Collection, L.L.C.*, 2012 WL 13034897, at *2.  A trial court's power to modify an injunction, like the power over all its orders, is inherent.  *Sierra Club v. U.S. Army Corps of Engineers,* 732 F.2d 253, 256 (2d Cir.1984), *cert. denied,* 475 U.S. 1084, 106 S.Ct. 1464, 89 L.Ed.2d 720 (1986); *see also* 11 Wright & Miller § 2961, at 6000 ("wide discretion") (quoting *System Fed'n No. 91 v. Wright,* 364 U.S. 642, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961)).  The Court has the equitable discretion to vacate or modify an injunctive order.  *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 328 (S.D.N.Y. 2010) (citing *Update Art, Inc. v. Charnin*, 110 F.R.D. 26, 35–36 (S.D.N.Y. 1986)).

The burden of the moving party seeking to modify a preliminary injunction "remains unclear[,] but it is clear enough that the burden lies with the party seeking modification."  *Sec. & Exch. Comm'n v. CKB168 Holdings, Ltd.*, No. 13-CV-5584, 2017 WL 4465726, at *4 (E.D.N.Y. June 20, 2017) (internal quotation marks omitted) (citing *Ideavillage Prods. Corp. v. Bling*

*Boutique Store*, No, 16-CV-9039, 2017 WL 1435748, at *3 (S.D.N.Y. Apr. 21, 2017)).  In other Circuits, courts require a moving party to show a "significant change in facts or law."  *Lawsky v. Condor Capital Corp.*, No. 14-CV-2863, 2014 WL 3858496, at *5 (S.D.N.Y. Aug. 1, 2014). This standard has been taken up by a number of district courts within this Circuit as well. *Id.* (collecting cases); *see also CKB168 Holdings*, 2017 WL 4465726, at *4; *Ideavillage*, 2017 WL 1435748, at *3.

A court may modify a preliminary injunction "'if the moving party demonstrates that a material change in circumstances justifies the alteration.'"  *D9 Collection, L.L.C.*, 2012 WL 13034897, at *2 (quoting *Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*, 427 F. Supp. 2d 491, 501 (S.D.N.Y. 2006), *aff'd* 246 Fed. App'x 73 (2d Cir. 2007) (summary order)).  The changed circumstances must show that "continuance of the injunction is no longer justified and/or will work oppressively against the enjoined parties."  *Id.*  (internal quotation marks and citation omitted).

For the same reasons provided above, the Moving Defendants have not demonstrated a "significant change in facts or law" or "material change in circumstances" justifying the alteration of the preliminary injunction.  Although the Moving Defendants propose, in the alternative, that the preliminary injunction be modified to allow for the sale of the Property to proceed on the condition that the amount of the Judgment, *i.e.*, $265,834.84, be deposited in an attorney escrow account or another account the Court deems appropriate, for similar reasons provided above, the Moving Defendants have not demonstrated that this proposed modification is necessitated by any significant change in facts or circumstances.  *See* Defs.' Mem. Pt. II at 9-15.

For these reasons, the Court respectfully recommends to Judge Feuerstein that the Moving Defendants' motion to vacate or modify the August 7, 2019 Order granting a preliminary injunction against the Original Defendants, pursuant to this Court's inherent power, be DENIED.

**D.      Motion to Strike the Amended Complaint**

Initially, the Moving Defendants moved to strike the Amended Complaint arguing that it was improperly filed more than 21 days from the date the Answer was filed without leave of Court under the Rules 15 and 21.  *See* Defs.' Mem. Pt. II at 8.  In the alternative, the Moving Defendants requested permission to answer or respond to the Amended Complaint by a date certain.  *Id.*  Subsequently, the Moving Defendants withdrew their request to strike the Amended Complaint under Rule 15 acknowledging that the Amended Complaint was indeed filed within the 21-day window provided under Rule 15.  *See* DE 78.  In an attempt to salvage this aspect of its motion, the Moving Defendants pivoted and argued that the Amended Complaint should nonetheless be stricken because New Falls did not seek leave to add new parties to the Complaint under Rule 21.  *See* DE 78.

As an initial matter, the Court the notes that a simple review of the docket would have revealed to counsel that the Moving Defendants did in fact file an Answer to the Amended Complaint on April 25, 2019.  *See* Answer.  Therefore, the Court will not permit the Moving Defendants "to answer or respond to the Amended Complaint by a date certain" absent a proper motion for leave to file an amended answer.  Further, the filing of an Answer to the Amended Complaint months prior to making this motion itself constitutes a waiver of the arguments now made in support of striking the Amended Complaint.  Nonetheless, there is legal authority in this

Circuit to support the proposition that a party seeking to amend its pleadings to join a party within the 21 day window provided by Rule 15 may do so as a matter of course.

Rule 15 permits a party to "amend its pleading once as a matter of course within ... 21 days after service of a motion under Rule 12(b). Fed. R. Civ. P. 15(a)(1)(b). But, because New Falls' Amended Complaint added defendants, the well-recognized conflict between Rule 15 and Rule 21 arises. *See* 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1479 (3d ed.) ("The application of the liberal amendment policy embodied in Rule 15(a) occasionally comes into conflict with another federal rule, particularly in the context of amendments as of course under Rule 15(a)(1)."). Rule 21 provides that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21.

The Second, Fourth, Fifth, and Tenth Circuits have adopted the approach that Rule 15(a)(1) governs under these circumstances and that a party seeking to amend its pleadings to join a party within the 21 day window provided by Rule 15 may make the amendment as a matter of course. *See Washington v. N.Y.C. Bd. of Estimate*, 709 F.2d 792, 795 (2d Cir. 1983) (finding district court abused its discretion by denying plaintiff's attempt to amend his complaint to add defendants within Rule 15(a)'s twenty-one day window); *Galustian v. Peter*, 591 F.3d 724, 730 (4th Cir. 2010) ("While some courts have concluded that Rule 15(a) does not apply to amendments seeking to add parties, most courts, including this one, have concluded otherwise.") (citations omitted); *United States ex rel. Precision Co. v. Koch Indus., Inc.*, 31 F.3d 1015, 1018 (10th Cir. 1994) ("Because the amendment was made before defendants had filed a responsive pleading, plaintiffs were entitled to the amendment as a matter of right."); *McLellan v. Miss. Power & Light Co.*, 526 F.2d 870, 873 (5th Cir. 1976) ("Which rule takes precedence if a party attempts to drop or add parties by an amended pleading filed before a responsive pleading is

23

served? ... The District Court in this case gave precedence to Rule 21.  We reach the opposite conclusion.") *vacated in part on other grounds*, 545 F.2d 919 (5th Cir. 1977).  In an unpublished order, the Sixth Circuit also found that "Rule 15(a) permits a plaintiff to file an amended complaint, without seeking leave from the court, at any time before a responsive pleading is served."  *Broyles v. Correctional Med. Servs., Inc.*, No. 08-1638, 2009 WL 3154241, at *3 (6th Cir. Jan. 23, 2009).  The Seventh Circuit, on the other hand, has held that Rule 21 governs under these circumstances and that a plaintiff cannot add a new defendant to a complaint amended as a matter of course.  *See Williams v. United States Postal Serv.,* 873 F.2d 1069, 1072 n. 1 (7th Cir.1989).

Therefore, in light of Second Circuit precedent and the majority view among the Circuits, the Court finds that New Falls was permitted to amend its pleadings to add a party without leave of court within the time allowed by Rule 15(a)(1).  For these reasons, the Court respectfully recommends to Judge Feuerstein that the Moving Defendants motion to strike New Falls' Amended Complaint or, alternatively, leave to answer or respond to the Amended Complaint by a date certain be DENIED.

## VI.    CONCLUSIONS

For the foregoing reasons, the Court respectfully recommends to Judge Feuerstein that the Moving Defendants' motion to reconsider, vacate, or modify of the August 27, 2019 Order granting a preliminary injunction against the Original Defendants and to strike the Amended Complaint be DENIED.

## IV.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from entry of this Report and Recommendation to file

written objections.  *See also* Fed. R. Civ. P. 6(a), (e).  Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF.  **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Sandra J. Feuerstein.  Any requests for an extension of time for filing objections must be directed to Judge Feuerstein prior to the expiration of the 14-day period for filing objections**.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Central Islip, New York
        September 30, 2020

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
United States Magistrate Judge