**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
NEW FALLS CORPORATION,

                    Plaintiff,

      v.

SONI HOLDINGS, LLC; KUNAL SONI;
ANJALI SONI; 632 MLK BLVD JR, LLC; OM
P. SONI; SONI CAPITAL RESOURCES, LLC;
WEANONA HUGIE; and RICHARD SPEARS,

                    Defendants.
--------------------------------------------------------X

                **REPORT AND**
            **RECOMMENDATION**

       19-CV-00449 (HG) (LGD)

**LEE G. DUNST**, Magistrate Judge:

      As District Judge Hector Gonzalez has aptly observed, "[t]hese parties have an intricate

litigation history." *New Falls Corp. v. Soni Holdings, LLC*, No. 19-CV-00449, 2022 WL 4357410, at

*1 (E.D.N.Y. Sept. 20, 2022). In fact, there are three related actions pending in this district in which

there collectively are more than 580 docket entries from 2016 through the present.[1] *See New Falls*

*Corporation v. Soni*, No. 16-CV-06805 (E.D.N.Y.); *New Falls Corporation v. Soni et al.*, No. 18-CV-

02768 (E.D.N.Y); *New Falls Corporation v. Soni Holdings, LLC et al.*, No. 19-CV-00449.

      The latest installment in that history is this immediate Report and Recommendation pursuant

to two separate referrals from District Judges Sandra J. Feuerstein and Hector Gonzalez, respectively,

on the amount of attorneys' fees and costs owed to plaintiff New Falls Corporation ("Plaintiff") as a

result of two separate orders that found defendants Soni Holdings, LLC, Kunal Soni, Anjali Soni, 632

MLK BLVD JR, LLC, Om P. Soni, and Soni Capital Resources, LLC (collectively, the "Soni

Defendans") in contempt for violating court orders in this action. *See* October 11, 2022 Order; *New*

*Falls*, 2022 WL 4357410, at *5-6; *New Falls Corporation v. Soni Holdings, LLC*, No. 19-CV-00449,

---

[1] The same parties are also engaged in related litigation in federal court in Alabama and state court in New York.
*See New Falls Corporation v. Soni Holdings LLC*, No. 17-CV-01330 (N.D. Ala); *New Falls Corporation v. Soni Holdings,*
*LLC*, No. 601304/2021 (N.Y. Sup. Ct., Nassau Cnty.).

2021 WL 919110, at *10 (E.D.N.Y. Mar. 8, 2021).  For the reasons set forth herein, the undersigned recommends that the Court award Plaintiff a grand total of $12,423.96 in attorneys' fees and costs.

## I.      BACKGROUND

As familiarity with the parties' litigation history is presumed, "[t]he Court will therefore summarize only the facts necessary to decide" the instant referrals.  *New Falls*, 2022 WL 4357410, at *1 (directing reader to the litigation history detailed in *New Falls Corp. v. Soni Holdings, LLC*, No. 19-CV-00449, 2022 WL 20058522, at *1 (E.D.N.Y. Sept. 13, 2022)).

### A.      Plaintiff's Claims

This case is one "in a series of actions filed by Plaintiff which grow out of the same alleged factual nexus . . .  concern[ing] different aspects of allegedly fraudulent activity of members of the Soni family in their attempts to avoid repayment of funds to Plaintiff in connection with a business loan which is evidenced by a promissory note (the 'Note') and Guaranty Agreement."  *New Falls*, 2021 WL 919110, at *1.  Plaintiff allegedly owns the Note whereby defendant Soni Holdings, LLC ("Soni Holdings") borrowed $301,216.50 and for which defendant Om Soni allegedly signed a Guaranty Agreement.  Electronic Case File Number ("ECF No.") 26 ¶¶ 18–22.  Plaintiff alleges that Soni Holdings defaulted on the Note and that Om Soni has refused to pay the debt due under his guaranty.  *Id*. ¶¶ 20, 23-24.   Plaintiff further alleges here "that in an attempt to avoid repayment of $265,834.84 pursuant to the Note held by Plaintiff, and on which judgment was entered in Plaintiff's favor, all of the defendants have conspired to fraudulently convey real property located at 632-634 MLK Jr. Boulevard, Newark, New Jersey 07102 (the 'Newark Property')."  *New Falls*, 2021 WL 919110, at *1.  Plaintiff asserts that all defendants in this action violated the Racketeer Influenced And Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq* and committed fraudulent transfer and tortious interference under New York law.  *See* ECF No. 26.

**B.     The Temporary Restraining Order And Subsequent Preliminary Injunction**

On January 24, 2019, Judge Feuerstein issued an Order To Show Cause With Temporary Restraining Order, which ordered (among other things) that "pending the determination on [Plaintiff's motion for a preliminary injunction], the Defendants, their representatives, agents, successors and assigns are hereby restrained from selling, transferring, conveying, hypothecating, mortgaging, liening, encumbering, or otherwise disposing of the Defendants' interest in the [Newark Property]" (the "TRO").  ECF No. 8 at 2.  On August 7, 2019, District Judge Arthur D. Spatt issued a preliminary injunction extending the TRO's prohibitions until a "final disposition" of this case or the issuance of an order vacating the preliminary injunction (the "PI Order").  *New Falls Corp. v. Soni Holdings, LLC*, No. 19-CV-00449, 2019 WL 3712127, at *6 (E.D.N.Y. Aug. 7, 2019).

**C.     The First Contempt Order**

On January 21, 2020, Plaintiff filed a two-page letter motion for sanctions asserting that the Soni Defendants violated the TRO.  ECF No. 82.  On January 27, 2020, Judge Spatt denied that letter motion without prejudice due to Plaintiff's failure to comply with Judge Spatt's Individual Practice Rules, which prohibited letter motions seeking sanctions.  *See* ECF No. 85 ("The Court will not award sanctions based on a letter motion. The Plaintiff must file an appropriate notice of motion with an accompanying memorandum of law." (citing Judge Spatt's Individual Practice Rule IV.B)).

On February 6, 2020, Plaintiff filed a motion for contempt under Federal Rule of Civil Procedure ("Rule") 70(e) asserting "that the Soni Defendants violated the [TRO and PI Order] by: (1) failing to pay [approximately $63,500 in] real estate taxes on the Newark Property, despite continuing to collect rents on the Newark Property; and (2) [thereby] causing a lien to be placed on the Newark Property . . . ."  *New Falls*, 2021 WL 919110, at *9 (citing ECF No. 88-1 at 8).

On March 8, 2021, Judge Feuerstein issued an order that found (among other things) that (1) "the identical language in the [TRO and PI Order] is clear and unambiguous"; (2) "[t]he

uncontested evidence" showed the nonpayment of taxes and the resulting lien on the Newark Property confirmed that the Soni Defendants failed to comply with the TRO and PI Order; and (3) the Soni Defendants' noncompliance reflected "a lack of good faith or reasonable diligence in complying with the Court's orders" ("First Contempt Order").  *Id*.  For those reasons, Judge Feuerstein "grant[ed] Plaintiff's Rule 70(e) motion and f[ound] the Soni Defendants in civil contempt for failure to comply with the [TRO and PI Order]."  *Id*. at *10.  Given that finding, the First Contempt Order directed the Soni Defendants to (1) pay outstanding real estate taxes, outstanding liens, and future taxes on the Newark Property; and (2) pay Plaintiff's "attorneys' fees and costs associated with briefing the motion for contempt."  *Id*.  Finally, Judge Feuerstein referred "the determination of attorneys' fees and costs" to a previously-assigned magistrate judge[2] and directed Plaintiff to provide supporting documents within 60 days.  *Id*.  Plaintiff timely filed documents in support of its claimed fees.  *See* ECF No. 127.

On April 3, 2021, the Soni Defendants appealed the First Contempt Order.  ECF No. 122.  On July 14, 2022, the Second Circuit found that it "lack[ed] jurisdiction" to review that interlocutory appeal.  *New Falls Corp. v. Soni Holdings, LLC*, No. 21-865-CV, 2022 WL 2720517, at *1 n.1 (2d Cir. July 14, 2022).

### D.     The Second Contempt Order

On June 3, 2022, Plaintiff filed a pre-motion conference request with Judge Gonzalez (to whom this case had been reassigned) seeking, pursuant to Judge Gonzalez's Individual Practice Rules, leave to file a motion for contempt.  *See* ECF No. 151.  On June 11, 2022, Judge Gonzalez granted Plaintiff leave to file that motion.  *See* June 11, 2022 Order.

On June 27, 2022, Plaintiff filed another motion for contempt under Rule 70(e) asserting that the Soni Defendants violated the TRO, PI Order, and First Contempt Order by failing to pay

---

[2] On June 13, 2022, this case was reassigned to the undersigned magistrate judge.  *See* June 13, 2022 Notice Of Reassignment.

approximately $72,000 in real estate taxes on the Newark Property.  *See* ECF No. 155-17 at 3, 7.  On

September 20, 2022, Judge Gonzalez issued an order that (1) granted the motion for contempt as to

defendants Soni Holdings, Kunal Soni, Anjali Soni, and 632 MLK BLVD JR LLC; (2) declined to

find defendants Om P. Soni and Soni Capital Resources, LLC in contempt; (3) directed "[t]he Soni

Defendants [to] pay all past taxes due on the Newark Property"; and (4) instructed Plaintiff to "file

proof of the fees and costs it incurred in preparing this motion on or before October 4, 2022" (the

"Second Contempt Order" and together with the First Contempt Order, the "Contempt Orders").  *See*

*New Falls*, 2022 WL 4357410, at *5-6 (citation omitted).  Plaintiff timely filed documents in support

of its claimed fees.  *See* ECF No. 174.  On October 11, 2022, Judge Gonzalez referred Plaintiff's

application for attorneys' fees and costs under the Second Contempt Order to the undersigned.  *See*

October 11, 2022 Order.

### E.    The Denial Of The Motion To Reconsider The Contempt Orders And The Subsequent Local Civil Rule 83.6(b) Hearing

On November 9, 2022, Judge Gonzalez denied the Soni Defendants' implied request to

reconsider the Contempt Orders.  *See New Falls Corp. v. Soni Holdings, LLC*, No. 19-CV-00449,

2022 WL 16834561, at *5 (E.D.N.Y. Nov. 9, 2022) ("To the extent the Soni Defendants want the

Court to modify any obligations in its prior contempt decisions, the Court treats that request as a

motion to reconsider those decisions. The Court denies that motion . . . .").

On December 21, 2022, the undersigned granted the Soni Defendants' request under Local

Civil Rule 83.6(b) to schedule a hearing on the damages occasioned by the contemptuous conduct

identified in the Contempt Orders.[3]  *See* December 21, 2022 Order.  On March 27, 2023, the Court

held the Local Civil Rule 83.6(b) hearing.  *See* ECF No. 208.  In April 2023, the parties filed their

---

[3] Local Civil Rule 83.6(b) provides that "[i]f the alleged contemnor puts in issue his or her alleged misconduct *or the damages thereby occasioned*, said person shall upon demand be entitled to have oral evidence taken, either before the Court or before a master appointed by the Court." Loc. Civ. R. 83.6(b) (emphasis added).  On December 21, 2022, the undersigned rejected Plaintiff's arguments that (1) the Contempt Orders precluded a hearing on the amount of damages, and (2) Local Civil Rule 83.6(c) applies instead and does not require a hearing.  *See* December 21, 2022 Order.

post-hearing letter briefs.  *See* ECF Nos. 212, 216.  Notably, neither party seems to have ever ordered a transcript of the March 27, 2023 hearing because neither party referenced it in their post-hearing submissions.

## II.    LEGAL STANDARD

"Civil sanctions have two purposes: to coerce compliance with a court order and to compensate a plaintiff."  *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 101 (2d Cir. 2016).   A contempt order may "serve either goal—the coercive or the compensatory—by awarding attorneys' fees and costs to a contempt victim."  *Al Hirschfeld Found. v. Margo Feiden Galleries Ltd.*, 438 F. Supp. 3d 203, 207 (S.D.N.Y. 2020) (citing *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996)); *see Software Freedom Conservancy, Inc. v. Westinghouse Dig. Elecs., LLC*, 812 F. Supp. 2d 483, 491 (S.D.N.Y. 2011) ("It is well settled in this Circuit that costs, including reasonable attorneys' fees, may be awarded to the party who prosecutes a contempt motion as an appropriate compensatory sanction for contumacious behavior." (internal quotations omitted)).

The Supreme Court has explained that the "determination of fees should not result in a second major litigation. The fee applicant . . . must, of course, submit appropriate documentation to meet the burden of establishing entitlement to an award.  But trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011) (internal quotations omitted); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of the fee."); *Fikes Wholesale, Inc. v. HSBC Bank USA*, N.A., 62 F.4th 704, 726 (2d Cir. 2023) (holding that *Hensley* remains "instructive" with respect to attorneys' fees).  "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.  So, trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox*, 563 U.S. at 838.

Under federal law, courts calculate attorneys' fees "by determining the appropriate billable hours expended and 'setting a reasonable hourly rate, taking account of all case-specific variables.'" *Lilly v. City of New York*, 934 F.3d 222, 229–30 (2d Cir. 2019) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 189 (2d Cir. 2008)).  This is known as the "lodestar" method.  *See, e.g., id* at 229 (explaining that "reasonable hours expended multiplied by the reasonable hourly rate" is the "lodestar").  The Supreme Court has "affirmed its long-standing position that 'the lodestar method yields a fee that is presumptively sufficient.'"  *Id*. at 231 (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552, 553-54 (2010)); *see Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a presumptively reasonable fee." (internal quotations omitted)).  Accordingly, courts use the lodestar method to determine attorneys' fee awards resulting from contempt.  *See Treyger v. First Class Furniture & Rugs Inc.*, No. 21-CV-2902, 2022 WL 18356256, at *5-6 (E.D.N.Y. July 14, 2022) (using the lodestar method to determine attorneys' fees owed due to contempt), *report and recommendation adopted*, 2023 WL 199698 (E.D.N.Y. Jan. 17, 2023); *see also Hunter v. City of New York*, 12-CV-6139, 2021 WL 4942769, at *4 (E.D.N.Y. Oct. 22, 2021) (using the lodestar method to determine attorneys' fees owed for sanctioned conduct).

A court exercises "its considerable discretion" when it "bear[s] in mind *all* of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Lilly*, 934 F.3d at 230 (quoting *Arbor Hill*, 522 F.3d at 190) (alterations omitted); *see M. Harvey Rephen & Assocs., P.C. v. Chase Bank USA, N.A.*, 853 F. App'x 690, 693 (2d Cir. 2021) (recognizing that "[d]istrict courts have 'considerable discretion' in determining the appropriate amount of attorneys' fees" to award on a finding of contempt (quoting *Weitzman*, 98 F.3d at 720)).  "'The most critical factor' in a district court's determination of what constitutes reasonable

attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).  The courts may consider additional factors, including

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184.  The fee applicant bears the burden of "submit[ting] adequate documentation supporting the requested attorneys' fees and costs."  *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020).

## III.   DISCUSSION

### A.   The Soni Defendants' Unsupported Claim That Attorneys' Fees Must Be Determined By A Jury

The Soni Defendants argue that "whether attorney's fees are awarded and the amount are within the province of the jury, not the Court."  ECF No. 212 at 1.  The Soni Defendants cite no legal authority for that proposition.  Nor could they.  That assertion is incorrect as a matter of law and inconsistent with Second Circuit precedent.

Whether a party has a right to a jury trial to determine *if* it owes attorney's fees depends on whether the fees would be awarded on a "legal" or "equitable" point of law.  *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1314 (2d Cir. 1993).  A party may demand a jury trial as to whether it owes attorneys' fees only if that issue arises in a "legal" action, such as a suit for breach of a contract to pay attorneys' fees.  *Id*.  A finding of contempt as here, however, is "equitable" and thus "the Court need not submit the issue [of] *whether* to award an attorney's fee to a jury."  *Theatre Confections, Inc. v. Sunstar Theatres Coral Springs, LLC*, No. 03-CV-6006 CJS, 2003 WL 21730694, at *1 (W.D.N.Y.

June 6, 2003) (emphasis added); *see McGuire*, 1 F.3d at 1315 (concluding that a party could not demand a jury trial on attorneys' fees because the "action was equitable in nature").

Critically for this Report and Recommendation, "the *amount of* attorneys' fees owed" is appropriately determined by the Court because calculating that figure "presents equitable issues of accounting which do not engage a Seventh Amendment right to a jury trial." *McGuire*, 1 F.3d at 1314 (emphasis added); *see Stoncor Grp., Inc. v. Peerless Ins. Co.*, No. 16-CIV-4574, 2021 WL 391344, at *1 (S.D.N.Y. Jan. 29, 2021) (same). Citing no cases in support of their flimsy argument, the Soni Defendants nonetheless contend that a jury trial is necessary and that a jury would be best suited to determine attorneys' fees here. *See* ECF No. 212 at 1-2. That argument flies in the face of controlling Second Circuit precedent in *McGuire*, which recognized that

> To compute a reasonable amount of attorneys' fees in a particular case requires more than simply a report of the number of hours spent and the hourly rate. The calculation depends on an assessment of whether those statistics are reasonable, based on, among other things, the time and labor reasonably required by the case, the skill demanded by the novelty or complexity of the issues, the burdensomeness of the fees, the incentive effects on future cases, and the fairness to the parties. *Such collateral issues do not present the kind of common-law questions for which the Seventh Amendment preserves a jury trial right*. In fact, in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975), the Supreme Court refused to extend the American Rule that parties pay their own fees absent statutory authorization precisely because of the equitable considerations involved in computing a reasonable amount of attorneys' fees . . .
>
> *Judges are better equipped than juries to make* [*attorneys' fee*] *computations* based on details about billing practices, including rates and hours charged on a particular case. In contrast, if the parties submitted evidence of the amount of attorneys' fees to a jury at trial, the time spent acculturating the jury to the mysteries of attorneys' hourly rates and incidental charges, and cross-examining about those matters, would likely increase fees and generate inconsistent awards.

*McGuire*, 1 F.3d at 1315-16 (emphasis added). Accordingly, the undersigned rejects the Soni Defendants' meritless assertion that a jury must determine the attorneys' fees owed under the Contempt Orders.[4] *See Sullivan as Tr. of Stone Setters Loc. 84 Pension Fund, Annuity Fund,*

---

[4] Defense counsel's insistence that a jury must determine the amount of attorneys' fees without acknowledging

*Vacation Fund, Apprentice Fund, & Indus. Promotion Fund v. Prestige Stone & Pavers Corp.*, No. 16-CV-3348, 2020 WL 2859006, at *11 (S.D.N.Y. Feb. 4, 2020) (finding under *McGuire* that defendant was not entitled to a trial on the amount of attorneys' fees it owed), *report and recommendation adopted*, 2020 WL 1528117 (S.D.N.Y. Mar. 30, 2020); *Cumberland Farms, Inc. v. Lexico Enterprises, Inc.*, No. 10-CV-4658, 2012 WL 1032732, at *2 (E.D.N.Y. Mar. 26, 2012) (same).

### B.    The Parties Abandoned Arguments Concerning The March 27, 2023 Hearing

Counsel litigated various issues during the March 27, 2023 hearing. *See* ECF No. 208 (minute entry for the hearing). However, in their post-hearing submissions, the parties include no citations to a transcript of that hearing or quotations of any hearing testimony. It appears to the Court that the parties failed to order a transcript of the hearing, and they certainly did not provide a copy to the Court. It is undisputed that a transcript of the hearing was available to the parties. *See* 28 U.S.C. § 753(b) (requiring transcripts to be made of "proceedings had in open court"); Loc. Civ. R. 1.7(b) (stating that attorneys may obtain transcripts of court proceedings, provided they prepay for each copy); ECF No. 208 (confirming the court reporter at the hearing was Mary Ann Steiger); *Transcript Information*, U.S. DIST. CT. E. DIST. N.Y., https://www.nyed.uscourts.gov/transcript-information (last visited July 6, 2023) (stating transcript orders must be placed through the individual court reporter; providing the telephone and facsimile numbers for Mary Ann Steiger). Here, the parties "fail[] to provide any pinpoint citations to the [hearing] transcript . . ., apparently satisfied to have this Court

---

the Second Circuit's on-point, controlling, and contrary *McGuire* decision may well be sanctionable. "Rule 11 is violated when it is clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Gurary v. Winehouse*, 235 F.3d 792, 798 (2d Cir. 2000) (internal quotations omitted) (applying Fed. R. Civ. P. 11(b)(2) and (c)). Thus, "[t]he failure to disclose controlling adverse authority with respect to any argument relied upon . . . is improper" and sanctionable. *Edison Coatings, Inc. v. Freedom Cement, LLC*, No. 15-CV-2726, 2017 WL 462339, at *2 (S.D.N.Y. Jan. 30, 2017); *see, e.g., Pacheco v. Chickpea at 14th St. Inc.*, No. 18-CV-251, 2019 WL 6683826, at *2 (S.D.N.Y. Dec. 6, 2019) (sanctioning defendants and their counsel for twice failing to cite or discuss controlling authority; noting that the first "failure to cite or discuss that controlling authority . . . was bad enough— and might well have warranted sanctions in its own right"); *see also Gurary*, 235 F.3d at 799 (awarding sanctions against a party whose arguments were "not warranted under existing law because it directly contradicts well-settled principles of [the relevant] jurisprudence").

hunt like a pig looking for truffles buried in the transcript." *Ohlson v. The Cadle Co.*, No. 04-CV-3418, 2008 WL 4516233, at *5 (E.D.N.Y. Sept. 30, 2008).  In fact, and emblematic of how they have litigated in this district in an unreasonable and unprofessional manner, counsel even dispute which exhibits were entered into evidence at that hearing.  *See* ECF No. 211 (reporting that counsel disputed whether all but two of the fourteen noted exhibits were entered into evidence at the hearing because "neither party yet has the transcript"); *New Falls Corp. v. Soni*, No. 16-CV-06805, 2022 WL 17811448 (E.D.N.Y. Dec. 19, 2022) (discussing how "both counsel have continued engage in needless finger-pointing and 'more of the same "I am rubber, you are glue" litigation strategy'" (quoting *Venture Grp. Enterprises, Inc. v. Vonage Bus. Inc.,* No. 20-CV-4095, 2022 WL 4814830 at *1 (S.D.N.Y. Sept. 30, 2022)).  It certainly appears that the parties may have not even reviewed the hearing transcript.

The undersigned will not do counsels' jobs for them and review the entire transcript to assess the parties' unsupported characterizations of the hearing.  *See* ECF No. 216 (Plaintiff's post-hearing submission (1) acknowledging the hearing lasted over four hours and (2) charactering the "evidence" and the "testimony" produced thereat without supporting citations to the hearing transcript or exhibits); ECF No. 212 (Soni Defendants' post-hearing submission characterizing the hearing in numerous ways, including by asserting that Mr. Giordano "did not produce or testify with any specificity as to time records," without supporting citations to the hearing transcript or exhibits).  The undersigned thus concludes that the parties waived their arguments concerning the content of the hearing.  *See Rodriguez v. Comm'r of Soc. Sec.*, No. 19-CV-6855, 2020 WL 3968267, at *20 (S.D.N.Y. July 14, 2020) (finding argument made without supporting evidence "should be waived as unsupported and lacking in merit" (internal quotations omitted)), *report and recommendation adopted*, 2020 WL 4572680 (S.D.N.Y. Aug. 7, 2020); *United States v. Molina-Rios*, No. 15-CR-122, 2017 WL 279554, at *3 (W.D.N.Y. Jan. 23, 2017) (holding that defendant's "argument to this Court is

devoid of any factual development . . . As such, his unsupported argument is deemed to be waived");

*see also Hutchinson v. Grace*, No. 19-CV-270, 2022 WL 1154347, at *3 n.1 (S.D.N.Y. Apr. 19, 2022)

(admonishing plaintiff because he "provides no citations to the trial transcript, and instead, selectively

offers self-serving recollections and his characterization of testimony").

### C.    The Hourly Rate For Attorney Tasks

"The reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in

mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case

effectively." *Lilly*, 934 F.3d at 231 (quoting *Arbor Hill*, 522 F.3d at 190).  That figure should be

based on hourly rates "prevailing in the community for similar services of lawyers of reasonably

comparable skill, experience, and reputation."  *Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec.*

*Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11

(1984)).  "Determination of the prevailing market rates may be based on evidence presented or a

judge's own knowledge of hourly rates charged in the community." *Spain v. Kinder Stuff 2010 LLC*,

No. 14-CV-2058, 2015 WL 5772190, at *8 (E.D.N.Y. Sept. 29, 2015) (first citing *Farbotko v. Clinton*

*Cnty. of N.Y.*, 433 F.3d 204, 209 (2d Cir. 2005); and then citing *Chambless v. Masters, Mates & Pilots*

*Pension Plan*, 885 F.2d 1053, 1059 (2d Cir. 1989)).  "[T]he 'community' . . . is the district where the

district court sits."  *Arbor Hill*, 522 F.3d at 190.  This is known as the "forum rule."  *See Restivo v.*

*Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017) ("According to the forum rule, courts should generally

use the hourly rates employed in the district in which the reviewing court sits in calculating the

presumptively reasonable fee." (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir.

2009)).

"Hourly rates awarded in the Eastern District of New York are typically based on years of

experience, and generally range from $300–$450 per hour for partners, $200–$300 per hour for senior

associates, and $100–$200 per hour for junior associates."  *Marshall v. Reisman*, No. 11-CV-5764,

2013 WL 1563335, at *2 (E.D.N.Y. Mar. 25, 2013), *report and recommendation adopted*, 2013 WL 1561478 (E.D.N.Y. Apr. 12, 2013).  Plaintiff's counsel, Steven Paul Giordano, is a senior associate at Vlock & Associates with over twenty years of experience as an attorney.[5]  ECF No. 216 at 2.  Vlock & Associates charged Plaintiff $220 per hour for Mr. Giordano's legal services in connection with the Contempt Orders.  *See* ECF No. 127 ¶ 5; ECF No. 174 ¶ 5.  It is undisputed that Plaintiff succeeded in prosecuting the motions that resulted in the Contempt Orders.  *See New Falls*, 2022 WL 4357410, at *6; *New Falls*, 2021 WL 919110, at *10.  That success is "[t]he most critical factor" to determining the reasonableness of Plaintiff's fee application.  *Barfield*, 537 F.3d at 152 (internal quotations omitted).  Given these circumstances, the Court finds Mr. Giordano's $220 hourly rate reasonable for attorney tasks.

The Soni Defendants' three arguments to undermine Mr. Giordano's hourly rate miss the mark.  *First*, the Soni Defendants assert that Mr. Giordano "is only an associate and is not partner/owner at Vlock & Associates."  ECF No. 212 at 2.  But Mr. Giordano's $220 hourly rate is on the low end of the spectrum of reasonable senior associate hourly rates in this district.  *See, e.g., Trustees of Loc. 807 Lab.-Mgmt. Pension Fund v. Showtime on the Piers, LLC*, No. 21-CV-3677, 2023 WL 2969298, at *7 (E.D.N.Y. Mar. 6, 2023) ("For senior associates, courts will find reasonable a rate of $200-$300 per hour."); *Trustees of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity, & Apprenticeship, Skill Improvement & Safety Funds v. Shelbourne Constr. Corp.*, No. 20-CV-1980, 2021 WL 7908024, at *6 (E.D.N.Y. Jan. 4, 2021) (same); *see also Liu v. Little Saigon Cuisine Inc.*, No. 18-CV-2181, 2023 WL 1785544, at *3 (E.D.N.Y. Feb. 6, 2023) (finding $200

---

[5] The Court takes judicial notice of Mr. Giordano's publicly available attorney registration with the New York State Unified Court System. *See Attorney Online Services - Search*, N.Y. STATE UNIFIED CT. SYS., https://iapps.courts.state.ny.us/attorneyservices/search?tab=attorney (type "Steven" into the "First Name" box, type "Giordano" in the "Last Name" box, click "Search" button, and then click the "GIORDANO, STEVEN PAUL" hyperlink on the resulting page) (last visited July 6, 2023) (showing Mr. Giordano is an attorney admitted in New York since February 4, 2002 with Registration Number 4035291); *Capitol Recs., LLC v. ReDigi Inc.*, No. 12-CV-95, 2022 WL 3348385, at *3 (S.D.N.Y. Aug. 12, 2022) (taking judicial notice of attorney's registration); *Himmelfarb v. Nat'l Bureau Collection Corp.*, No. 17-CV-4744, 2018 WL 4921662, at *3 (E.D.N.Y. Aug. 10, 2018) (same).

hourly rate was reasonable for associate with approximately seven years of experience).  *Second*, the Soni Defendants contend that Mr. Giordano has "little to no experience" in RICO cases.  ECF No. 216 at 2.  Accepting that unsupported assertion *arguendo*, the undersigned would still find Mr. Giordano's $220 hourly rate reasonable.  *See, e.g., Hunter*, 2021 WL 4942769, at *5 (finding $250 hourly rate for a senior associate was reasonable "notwithstanding a lack of expertise" in the relevant area of law); *Resnik v. Coulson*, No. 17-CV-676, 2020 WL 5802362, at *4 (E.D.N.Y. Sept. 28, 2020) (finding $325 hourly rate was reasonable for an associate attorney with fourteen years of practice despite "her lack of experience in this particular area of the law").  *Third*, the Soni Defendants contend that they have not received a copy of "the true agreement between Vlock & Associates and Plaintiff," posit that it "is more of a contingency based agreement rather than an hourly one," and argue that accordingly "perhaps nothing is owed" or that no invoices were actually sent.  ECF No. 212 at 2.  Even if true,[6] that argument ignores the Supreme Court's long-standing rule that "a contingent-fee contract does not impose an automatic ceiling on an award of attorney's fees."  *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989); *see Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 142 (2d Cir. 2007) (holding that a contingency fee arrangement "may not serve as a cap on an attorney fee award" under the lodestar method).  Courts therefore do not limit reasonable attorneys' fees based on an existing contingency agreement.  *See Lewis v. Roosevelt Island Operating Corp.*, No. 16-CV-03071, 2018 WL 4666070, at *10 (S.D.N.Y. Sept. 28, 2018) ("This Court holds that the fee award in this case need not be limited by the contingency-fee arrangement."); *Monette v. Cnty. of Nassau*, No. 11-CV-539, 2016 WL 4145798, at *10 & n.5 (E.D.N.Y. Aug. 4, 2016) (Bianco, J.) (similar); *Biondo v. Kaleida Health*,

---

[6] That assertion is negated by Mr. Giordano's sworn affirmations—which specify that his firm has charged and continues to charge Plaintiff a rate of $220 per hour—and attached contemporaneous time records that describe Mr. Giordano's work in connection with the Contempt Orders, when it was undertaken, how long it took, and confirms it was billed at a $220 hourly rate.  ECF No. 127 ¶¶ 4-5; ECF No. 174 ¶¶ 4-5; *see, e.g., CIT Bank, N.A. v. Zisman*, No. 17-CV-2126, 2023 WL 4060083, at *2 (E.D.N.Y. Mar. 23, 2023) (finding attorney affirmations and their attachments were "sufficient for the purpose of assessing the reasonableness of requested attorneys' fees"); *see also Dajbabic v. Rick's Café*, 995 F. Supp. 2d 210, 213 (E.D.N.Y. 2014) (awarding hourly fee within range of reasonableness after noting the Court lacked the retainer agreement).

No. 15-CV-362, 2016 WL 2752032, at *2 (W.D.N.Y. May 12, 2016) ("Nor is there any merit in

Defendant's further contention that attorneys fees as a sanction . . . should not be awarded where a

plaintiff is represented on a contingency fee basis.").

### D.     The Hourly Rate For Drafting Courtesy Copy Cover Letters

The Soni Defendants argue that they should not pay the full hourly attorney rate for the 0.7

hours that Mr. Giordano expended on cover letters that accompanied courtesy copies of the motions

that yielded the Contempt Orders.  *See* ECF No. 212 at 2 (describing these charges as

"unreasonable"); ECF No. 174-1 (showing Mr. Giordano spent 0.3 hours on July 19, 2022 to prepare

a courtesy copy cover letter); ECF No. 127-2 (showing Mr. Giordano spent 0.4 hours on February 6,

2020 to prepare a courtesy copy cover letter).  The undersigned agrees.  The Court may apply a

reduced rate for that ministerial work because "it is highly unlikely that a paying client would agree to

pay" an hourly attorney rate for work more suitably performed by a paralegal.  *Lilly*, 934 F.3d at 234.

"In recent years, courts in this district have approved hourly fee rates in the range of $70 to $100 for

paralegal assistants."  *LG Cap. Funding, LLC v. 5Barz Int'l, Inc.*, No. 16-CV-2752, 2019 WL

3082478, at *2 (E.D.N.Y. July 15, 2019) (quoting *Ferrara v. CMR Contracting LLC*, 848 F. Supp. 2d

304, 313 (E.D.N.Y. 2012)) (internal alterations omitted).  The undersigned finds that an $85 hourly

paralegal rate is appropriate for the minimal time spent on the courtesy copy cover letters.  *See id*. at

*3 (applying $85 hourly rate to time spent to prepare and coordinate delivery of courtesy copies);

*Santiago v. Coco Nail HB, Inc.*, No. CV 10-3373 ILG MDG, 2012 WL 1117961, at *5 (E.D.N.Y.

Mar. 16, 2012) (recommending $75 hourly rate in connection with mailing courtesy copies), *report*

*and recommendation adopted*, 2012 WL 1118853 (E.D.N.Y. Apr. 3, 2012); *see also Lilly,* 934 F.3d at

234 (affirming district court's reduction of an attorney's hourly rate for time spent on clerical tasks as

consistent with the Court's "broad discretion" to achieve "rough justice" on attorneys' fee

determinations (internal quotations omitted)).

**E.**     **Amount And Reasonableness Of Hours Expended By Plaintiff's Counsel**

1.     The Amount Of Hours Expended

As set forth herein, Plaintiff seeks to recover fees for 73.6 total hours of attorney work.  These fees fall into three categories.

*First,* Plaintiff's contemporaneous time and cost records (referenced herein as a "Detail Transaction File List" per the label on those documents) in connection with the First Contempt Order reflect that Mr. Giordano spent 28.3 hours to, among other things, (1) communicate by email and telephone with other attorneys at Vlock & Associates about the motion for contempt (notably, Plaintiff seeks attorneys' fees for only Mr. Giordano's time and not for any other attorney at his firm); (2) prepare the letter motion for sanctions that Judge Spatt denied without prejudice due to Plaintiff's failure to comply with Judge Spatt's Individual Practice Rules; (3) conduct legal research for and draft the motion for contempt; (4) prepare the notice of motion, affirmation, and exhibits that accompanied the motion; (5) prepare the letter to Judge Spatt that accompanied courtesy copies of the motion; (6) review the opposition to the motion and the cases cited therein; (7) draft the reply in support of the motion; and (8) review the resulting First Contempt Order.  *See* ECF No. 127-2.

*Second,* Plaintiff's Detail Transaction File List in connection with the Second Contempt Order reflects that Mr. Giordano spent 29.1 hours to, among other things, (1) review records for and communicate with defense counsel about taxes on the Newark Property; (2) review Judge Gonzalez's Individual Practice Rules regarding contempt motions; (3) conduct legal research for, draft, attach exhibits to, and file a letter motion consistent with Judge Gonzalez's Individual Practice Rules for leave to file a motion for contempt; (4) review the Soni Defendants' opposition to that letter motion; (5) conduct legal research for and draft the motion for contempt; (6) prepare the notice of motion, affirmation, and exhibits that accompanied the motion; (7) review the opposition to the motion and the cases cited therein; (8) draft the reply in support of the motion; (9) prepare letters to Judge Gonzalez

16

that accompanied courtesy copies of Plaintiff's motion papers; and (10) prepare the affirmation of legal services (ECF No. 174) consistent with the attorney fee award in the Second Contempt Order. *See* ECF No. 174-1.

*Third,* Plaintiff requests attorneys' fees for an additional 16.2 hours of time Mr. Giordano reportedly spent to prepare for and attend the March 27, 2023 hearing.  *See* ECF No. 216 at 2 (Plaintiff's post-hearing submission requesting $3,564 for time spent to prepare for and attend the hearing, which reflects 16.2 hours at the $220 hourly attorney rate).  Plaintiff failed to submit supporting documentation for that supplemental request for fees.

## 2.   Reasonableness of The Hours Billed

"In calculating the number of reasonable hours, the [C]ourt looks to its own familiarity with the case and its experience with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Palmer v. Cnty. of Nassau*, 977 F. Supp. 2d 161, 169 (E.D.N.Y. 2013) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir.1992)).  To the latter point, an award of attorneys' fees must be based on "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done."  *Fisher*, 948 F.3d at 600 (quoting *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983)). "Counsel is not required to 'record in great detail how each minute of his time was expended,' but he must 'identify the general subject matter of his time expenditures.'" *Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022) (quoting *Hensley*, 461 U.S. at 437 n.12).  "In determining the number of hours reasonably expended on a case, a district court properly excludes documented hours that are 'excessive, redundant, or otherwise unnecessary.'  The court may also decrease the total award from the claimed amount because of 'vagueness, inconsistencies, and other deficiencies in the billing records.'"  *Id*. (first quoting *Hensley*, 461 U.S. at 434; and then quoting *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)).  Further, "the court has discretion simply to deduct a reasonable percentage of the

number of hours claimed as a practical means of trimming fat from a fee application." *Id*. (quoting *Kirsch*, 148 F.3d at 173). Finally, "[t]he court may also 'reduce an attorney's hourly rate for time spent on clerical tasks or apply an across-the-board reduction to account for time spent on clerical tasks (or block-billed time entries reflecting a mix of clerical and legal work),' although the 'court is not required to make such reductions.'" *Id*. (quoting *Lilly*, 934 F.3d at 234) (internal alterations omitted).

At the outset, the undersigned recommends that the attorneys' fee award exclude the 16.2 hours Mr. Giordano reportedly expended to prepare for and attend the March 27, 2023 hearing, as Plaintiff has failed to submit the mandatory supporting "contemporaneous time records." *E.g.*, *Fisher*, 948 F.3d at 600 (internal quotations omitted). The Second Circuit has instructed that failure to provide contemporaneous time records with a fee application may be excused "only in the rarest of cases, . . . such as where the records were consumed by fire or rendered irretrievable by a computer malfunction before counsel had an opportunity to prepare his application." *Scott v. City of New York* (*Scott I*), 626 F.3d 130, 133 (2d Cir. 2010) (per curiam). Plaintiff had ample opportunity to provide such records to the Court, but failed to do so.[7] *See Urena v. 0325 Tuta Corp.*, No. 20-CV-3751, 2022 WL 17249362, at *2 (S.D.N.Y. Nov. 28, 2022) (declining to award attorneys' fees because the application lacked contemporaneous time records); *Stein v. 1-800-Flowers.com, Inc.*, No. 16-CV-6252, 2019 WL 1099946, at *2 (E.D.N.Y. Mar. 7, 2019) ("Stein's failure to submit contemporaneous time records is fatal to her motion."); *U.S. Bank Tr., N.A. v. Dingman*, No. 16-CV-1384, 2016 WL 6902480, at *6 (S.D.N.Y. Nov. 22, 2016) ("[T]he lack of contemporaneous time sheets precludes any such award."). The undersigned declines to "give Plaintiff yet another bite at the apple on this issue."

---

[7] The Court is aware that, absent contemporaneous time records, "entries in official court records (e.g. the docket, minute entries, and transcriptions of proceedings) may serve as reliable documentation of an attorney's compensable hours in court at hearings . . . ." *Scott v. City of New York* (*Scott II*), 643 F.3d 56, 59 (2d Cir. 2011) (per curiam). The Second Circuit, however, has "emphasize[d] that the onus of gathering the applicable docket entries and other court records, if any, is on the applying attorney, not the district court." *Id*. The undersigned will not assume Mr. Giordano's "onus" to alternatively support his request that the attorneys' fees award encompass his time at the hearing.

*New Falls*, 2022 WL 17811448 at *10 (internal quotations omitted).

Next, after reviewing Plaintiff's Detail Transaction File Lists, the undersigned finds that, with one exception, all other hours expended by Plaintiff's counsel in connection with the Contempt Orders were reasonable.  *See* ECF Nos. 127-2, 174-1 (Detail Transaction File Lists detailing Mr. Giordano's work for the Contempt Orders); *Hunter*, 2021 WL 4942769, at *7 ("After review of the record, the Court finds that the requested fees are reasonable with [one] exception . . . .").  The undersigned concludes that the 2.3 total hours Mr. Giordano spent on January 20, 2020 and January 21, 2020 to prepare, communicate with colleagues about, and file the January 21, 2020 improper letter motion for sanctions (ECF No. 82) should be excluded from the calculation of reasonable hours.  *See* ECF No. 127-2 at 2 (showing the second, third, fourth, and fifth unredacted entries that total 2.3 hours for tasks in connection with the January 21, 2020 letter motion).  As noted above, Judge Spatt denied that letter motion because it violated his Individual Practice Rules.  *See* ECF No. 85.  The time Plaintiff's counsel spent in connection with that improper and denied letter motion was therefore unnecessary and should be excluded from an attorneys' fee award.  *See Raja*, 43 F.4th at 87 (affirming that courts should exclude unnecessary time expenditures from attorneys' fee awards); *Marshall v. Randall*, No. 10-CV-2714, 2013 WL 12347282, at *10 (E.D.N.Y. Jan. 24, 2013) (excluding from fee award certain hours spent on researching, conferring about, and preparing an application because those efforts were "not necessary"); *see also Barfield*, 537 F.3d at 152 (explaining that "[t]he most critical factor" to determining reasonable attorneys' fees is "the degree of success obtained by the plaintiff" (internal quotations omitted)).

       3.    <u>The Soni Defendants' Arguments To Reduce Billable Hours Lack Merit</u>

Soni Defendants argue that Mr. Giordano's time expenditures should be reduced based on the discrete time billing entries for emailing colleagues or defense counsel in connection with the motions that yielded the Contempt Orders.  *See* ECF No. 212 at 2 ("Billing should be reduced for any discrete

tasks reflected on the billing. For example, the billing at .10 routinely for almost all emails (e.g., 1/27/2020 .10 $22.00; 04/19/2022 .10 $22.00; 05/04/2022 .10 $22.00; 05/18/2022 .20 $44.00)." (internal quotation and citation omitted)).  "[T]he practice of billing a tenth of an hour for a discrete task is not inherently problematic" but "can improperly inflate the number of hours billed beyond what is appropriate" when (1) "an attorney on a single day bills multiple 0.10 hour entries for discreet tasks" and (2) "the tasks individually appear likely to have occupied less than 0.10 hours and in total appear likely to have occupied less than the sum total of the 0.10 hour increments." *Hernandez v. Boucherie LLC*, No. 18-CV-7887, 2019 WL 3765750, at *6 (S.D.N.Y. Aug. 8, 2019) (quoting *C.D. v. Minisink Valley Cent. Sch. Dist.*, No. 17 CIV. 7632, 2018 WL 3769972, at *8 (S.D.N.Y. Aug. 9, 2018)) (internal alterations omitted).  Mr. Giordano's time entries are distinct from those at issue in *Salazar v. 203 Lena Inc.*, cited by the Soni Defendants (ECF No. 212 at 2), where counsel "billed a total of 9.5 hours in entries marked '0.10 hours.'"  No. 16-CV-7743, 2020 WL 5627118, at *13 (S.D.N.Y. Sept. 18, 2020), *report and recommendation adopted*, 2020 WL 6257158 (S.D.N.Y. Oct. 23, 2020).  The cases cited in *Salazar* likewise reduced attorney hours based on markedly different billing entries than those at issue here.  *See Hernandez,* 2019 WL 3765750, at *6 (reducing hours because "the billing records are replete with entries for '0.1 hours' (many on the same day) for ministerial tasks that could not possibly have taken more than a few moments. In total, [counsel] billed 7.5 hours in entries marked '0.1.'"); *C.D.*, 2018 WL 3769972, at *9 (reducing hours because "by the Court's tabulation, approximately 4.6 hours billed by Walsh took the form of 0.10 hour increments in which the same timekeeper billed multiple such entries in a single day").  The undersigned rejects this effort by the Soni Defendants to reduce Mr. Giordano's reasonable time entries.

The Soni Defendants further argue that "[b]illing should also be reduced for Mr. Giordano's alleged billing twice for the researching [of] the same case law (e.g., two almost identical motions for contempt), [and] researching how to produce attorney's fees applications." ECF No. 212 at 2. Mr. Giordano conducted a total of two hours of research in connection with the Second Contempt Order: (1) 0.5 hours of legal research on June 2, 2022 for the pre-motion conference letter with Judge Gonzalez, (2) 0.5 hours of legal research on June 21, 2022 for the opening brief for the motion for contempt, (3) 0.5 hours of legal research on July 12, 2022 for the reply brief in support of the motion, and (4) 0.5 hours of legal research on September 28, 2022 regarding how to seek the attorneys' fees awarded in the resulting Second Contempt Order. ECF No. 174-1. To the extent that the Soni Defendants seriously believe in good faith that Mr. Giordano should have relied on the research from his prior motion for contempt before Judge Feuerstein—submitted two years earlier—rather than spend the 0.5 hours (i.e., thirty minutes) on further research for each of the first three of the aforementioned submissions years later to Judge Gonzalez, "[t]he Court not only disagrees . . . but finds that it would have irresponsible for counsel <u>not</u> to perform follow-up research to learn if there have been important developments or new, relevant cases that would impact how plaintiff chooses to proceed." *Li Rong Gao v. Perfect Team Corp.*, No. 10-CV-1637, 2017 WL 9481011, at *15 (E.D.N.Y. Jan. 11, 2017), *report and recommendation adopted*, 2017 WL 1857234 (E.D.N.Y. May 8, 2017), *aff'd sub nom. Xiao Hong Zheng v. Perfect Team Corp.*, 739 F. App'x 658 (2d Cir. 2018). It also was reasonable for Mr. Giordano to spend 0.5 hours researching how to seek attorneys' fees in the last-noted submission because the Second Contempt Order directed Plaintiff to "file proof of the fees and costs it incurred" in preparing the underlying motion. *New Falls*, 2022 WL 4357410, at *6; *see Li Rong Gao*, 2017 WL 9481011, at *15 (approving time that "appears reasonably related to the instant motion for attorneys' fees, such as research about the standards for recovery and drafting portions of the memorandum of law").

21

**F.      Costs**

In connection with the First Contempt Order, Plaintiff seeks $274.45 in costs: $148.20 in

photocopying costs incurred on February 6, 2020, and $126.25 in costs incurred on February 7, 2020

for delivery of courtesy copies by way of "special messenger for walk-thru of oversized package."

ECF No. 127-2.  In connection with the Second Contempt Order, Plaintiff seeks $122.01 in costs:

(1) $69.40 in photocopying costs incurred on June 28, 2022, (2) $27.96 in costs incurred on June 28,

2022 to deliver courtesy copies by Federal Express, (3) $3.60 in photocopying costs incurred on July

20, 2022, and (4) $21.05 in costs incurred on July 20, 2022 to deliver courtesy copies by Federal

Express.  ECF No. 174-1.

"The Second Circuit has held that 'attorney's fees awards include those reasonable out-of-

pocket expenses incurred by attorneys and ordinarily charged to their clients.'"  *Stratakos v. Nassau

Cnty.*, 574 F. Supp. 3d 154, 162 (E.D.N.Y. 2021) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d

748, 763 (2d Cir. 1998)).  In other words, "out-of-pocket litigation costs are generally recoverable if

they are necessary for the representation of the client."  *Prot. One Alarm Monitoring, Inc. v. Exec.

Prot. One Sec. Serv., LLC.*, 553 F. Supp. 2d 201, 210 (E.D.N.Y. 2008) (internal quotations and

alteration omitted); *see Larsen v. JBC Legal Group, P.C.*, 588 F. Supp. 2d 360, 365 (E.D.N.Y. 2008)

(similar).  For example, court filing fees, process servers, printing, photocopying, messenger services,

postage, telephone costs, transcripts, transportation, meals, subpoenas, witness fees, deposition

services, and transcripts are recoverable.  *Spence v. Ellis*, No. 07-CV-5249, 2012 WL 7660124, at *9

(E.D.N.Y. Dec. 19, 2012) (collecting cases awarding costs for these expenditures), *report and

recommendation adopted*, 2013 WL 867533 (E.D.N.Y. Mar. 7, 2013); *LeBlanc*, 143 F.3d at 763

(recognizing that photocopying, travel, and telephone expenditures are recoverable as costs).  Costs

typically incurred as part of office "overhead expenses" are not recoverable.  *Westport Ins. Corp. v.

Hamilton Wharton Grp. Inc.*, 483 F. App'x 599, 605 (2d Cir. 2012) (quoting *LeBlanc*, 143 F.3d at

763).   The party seeking to recover costs bears the "burden in adequately documenting and itemizing the costs requested."  *E.g.*, *Cangemi v. Town of E. Hampton*, No. 12-CV-3989, 2023 WL 2674377, at *3 (E.D.N.Y. Mar. 29, 2023).  "Court fees reflected on the Court's docket and costs for which a claimant provides extrinsic proof, such as an invoice or receipt, are considered sufficiently substantiated, as is a sworn statement or declaration under penalty of perjury that certain amounts were expended on particular items."  *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 105 (E.D.N.Y. 2020).

The expenditures Plaintiff seeks to recover for photocopying, mailing, and messenger services are proper recoverable costs rather than unrecoverable overhead.  *See, e.g. Westport Ins.*, 483 F. App'x at 605 (affirming award of costs for, among other things, "in-house duplication costs," "postage," and "messenger service").  The Soni Defendants neither dispute that the costs are categorically recoverable nor contend that they were unreasonable in amount.  Instead, the Soni Defendants argue that "Mr. Giordano did not produce receipts or time records or other proper evidentiary material" in support of the costs.  ECF No. 212 at 1.  However, Mr. Giordano submitted affirmations in which he swore under penalty of perjury that these costs were incurred in connection with the Contempt Orders as itemized in the Detail Transaction File Lists attached to his affirmations. *See* ECF Nos. 127 ¶ 4 (affirming under penalty of perjury that Plaintiff incurred $274.45 in costs in connection with the First Contempt Order); ECF No. 127-2 (itemizing those costs); ECF No. 174 ¶ 4 (affirming under penalty of perjury that Plaintiff incurred $122.01 in costs in connection with the Second Contempt Order); ECF No. 174-2 (itemizing those costs).  Mr. Giordano's affirmations are sufficient proof for those costs.  *See Mendoza v. CGY & J Corp.*, No. 15-CV-9181, 2017 WL 4685100, at *3 (S.D.N.Y. Oct. 17, 2017) (awarding certain costs because counsel "attested under penalty of perjury" to them); *Chesney v. Prestige Motor Sales, Inc.*, No. 15-CV-6369, 2017 WL 11806232, at *7 (E.D.N.Y. Feb. 8, 2017) (similar), *report and recommendation adopted*, 2017 WL

11806233 (E.D.N.Y. May 8, 2017); *Abel v. Town Sports Int'l, LLC*, No. 09-CV-10388, 2012 WL 6720919, at *34 (S.D.N.Y. Dec. 18, 2012) (finding costs were "adequately supported" because they were described in a declaration under penalty of perjury).

### G.    Daily Fine

Plaintiff's counsel asks the Court to "institute a daily fine" in an unspecified amount if the Soni Defendants hypothetically "refuse to repay the attorneys' fees" in the future.  ECF No. 216 at 2.  The Soni Defendants contend such a fine "should be denied."  ECF No. 212 at 2.   The undersigned does not recommend that the Court impose a daily fine.  *First*, a daily fine is beyond the relief Plaintiff requested when it sought the Contempt Orders.  For each of those underlying motions, Plaintiff requested a "fine" only "in the amount of Plaintiff's costs and reasonable attorneys' fees" as addressed herein.  ECF No. 88-1 ¶¶ 3(c), 26; ECF No. 155-1 ¶¶ 3(c), 35.  *Second*, as the Second Contempt Order recognized, a daily fine is a separate remedy from an award of attorneys' fees.  *See New Falls*, 2022 WL 4357410, at *3 (acknowledging the difference between coercive fines and attorneys' fee awards); *see also e.g.*, *MAS Wholesale Holdings LLC v. NW Rosedale Inc.*, No. 19-CV-1294, 2021 WL 1946380, at *11 (E.D.N.Y. May 14, 2021) (separately addressing whether to impose a coercive fine and/or attorneys' fees under their distinct standards), *reconsideration denied*, 2021 WL 3080355 (E.D.N.Y. July 21, 2021); *LaBarbera v. Gulgar Trucking*, No. 07-CV-4106, 2020 WL 9814079, at *2 (E.D.N.Y. Feb. 4, 2020) (same); *Tacuri v. Nithun Constr. Co.*, No. 14-CV-02908, 2019 WL 6914042, at *3 (E.D.N.Y. Dec. 19, 2019) (same).  Thus, whether to award a daily fine is beyond the scope of this Report and Recommendation on the amount of attorneys' fees owed to Plaintiff under the Contempt Orders—neither of which imposed a daily fine.  *Third*, Plaintiff fails to cite any authority for whether and when a Court should impose a daily fine for the speculative and hypothetical nonpayment of attorneys' fees in the future, nor does Plaintiff address the amount of such a potential daily fine.  *Compare* ECF No. 216, *with Paramedics Electromedicina Com., Ltda v. GE*

*Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 657–58 (2d Cir. 2004) (directing courts deciding whether to impose a coercive fine to consider (1) "the character and magnitude of the harm threatened by continued contumacy," (2) "the probable effectiveness of any suggested sanction in bringing about compliance," and (3) "the contemnor's ability to pay." (internal quotations and alterations omitted)).

## IV.    CONCLUSION

For the reasons described above, the undersigned recommends the Court award Plaintiff a total of $12,423.96 in attorneys' fees and costs as follows.

*First,* under the First Contempt Order, Plaintiff should receive fees for 26 hours of attorney time.  Of that time, 25.6 hours for attorney work should be charged at a $220 hourly attorney rate, and 0.4 hours spent on the courtesy copy transmittal letter should be charged at an $85 hourly paralegal rate.  Plaintiff should also receive its $274.45 in costs.  Accordingly, the undersigned recommends that the Court award Plaintiff $5,940.45 in attorneys' fees and costs owed by the Soni Defendants in connection with the First Contempt Order, representing (1) $5,632 (25.6 hours × $220), (2) $34 (0.4 hours × $85), and (3) $274.45 in costs.

*Second,* under the Second Contempt Order, Plaintiff should receive fees for 29.1 hours of attorney time.  Of that time, 28.8 hours for attorney work should be charged at a $220 hourly attorney rate, and 0.3 hours spent on the courtesy copy transmittal letter should be charged at an $85 hourly paralegal rate.  Plaintiff should also receive its $122.01 in costs.  Accordingly, the undersigned recommends that the Court award Plaintiff $6,483.51 in attorneys' fees and costs owed by defendants Soni Holdings, Kunal Soni, Anjali Soni, and 632 MLK BLVD JR LLC in connection with the Second Contempt Order, representing (1) $6,336 (28.8 hours × $220), (2) $25.50 (0.3 hours × $85), and (3) $122.01 in costs.

*Third,* the Court should reject Plaintiff's attorneys' fee requests for the 2.3 hours spent on the improper January 21, 2020 letter motion to Judge Spatt, and the unsupported 16.2 hours Plaintiff

claims to have spent to prepare for and attend the March 27, 2023 hearing.

## V. OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Gonzalez. FAILURE TO FILE TIMELY OBJECTIONS SHALL CONSTITUTE A WAIVER OF THOSE OBJECTIONS BOTH IN THE DISTRICT COURT AND ON LATER APPEAL TO THE UNITED STATES COURT OF APPEALS. *See Thomas v. Arn*, 474 U.S. 140, 154-55 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *F.D.I.C. v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995).

**SO ORDERED:**

Dated:    Central Islip, New York
          July 6, 2023

s/ Lee G. Dunst
_____

**LEE G. DUNST**
United States Magistrate Judge